## BOONVILLE SPECIAL ROAD DISTRICT, Respondent, v. MARTIN FUSER, Appellant.

### Kansas City Court of Appeals, November 2, 1914.

1. **ROADS AND HIGHWAYS: Wilfully Obstructing: Notice.** In a suit to recover the $5 daily penalty provided in Sec. 10533, R. S. 1909, for wilfully obstructing a public road, the notice required by the statute is given where the road overseer made out and officially signed a written notice to defendant telling him of the obstruction and notifying him to remove it forthwith and if not removed in ten days he would be liable to the penalty of the statute, and said overseer thereupon gave said signed written notice to his son with directions to read and deliver it to defendant, all of which the son did.

2. ————: ————: **Res Adjudicata.** The right of plaintiff to sue having been decided adversely to defendant on a former appeal, that question is not now open to review since it has become *res adjudicata.*

3. ————: ————: **Constitutional Question: When to be Raised.** Unless a constitutional question is raised in the trial court, and then timely in the orderly course of procedure and is thereafter preserved in the motion for new trial, there is no constitutional question in a case.

4. ————: ————: **Evidence.** The facts in the case reviewed and *held* to show that the public road in controversy was knowingly obstructed.

5. ————: ————: **Change of Road for Purpose of Cultivation.** The straightening of a crook or turn in a public road by the county court under the petition of a landowner pursuant to Sec. 10444, R. S. 1909, merely relocates the road at the place of such crook or turn. It does not affect the location of the road elsewhere and at a point distant from the land of the petitioner.

6. ————: ————: **Reduction of Width of Road.** There was no statutory authority existing in 1874 whereby a county court could reduce the width of a road. Section 5 of the Act approved March 23, 1868, Laws of Mo. 1868, p. 150, which conferred such authority was expressly repealed by Sec. 72, Wagner's Stats., Vol. 2, p. 1230, approved March 18, 1872.

7. ————: ————: ————: **Effect of Reducing Order.** Whether the county court's order reducing the width of the road was

valid or invalid would be immaterial upon the question of whether defendant knowingly obstructed the road, provided the road was actually reduced upon the ground. But where the order was invalid and nothing was done to reduce the width of the road as actually existing upon the ground, and the limits of the roadway as actually used were plainly apparent, such order would constitute no defense.

8. ———: **Road by Prescription and Adverse User.** Where the public, with the knowledge and consent of the abutting landowner, has continuously used and traveled over and has accepted ground as a public road for from forty to sixty-five years, the same becomes a public road by prescription.

9. ———: ———: **Power of County Surveyor.** Where a road had been in actual existence for many years, and its location plainly marked out by use so that it was clearly descernible, the fact that the county surveyor, erroneously supposing that the center of the road was on the section line and was only forty feet wide, pointed out to defendant where to set his fence, will not protect defendant in thereafter setting his, fence in the road actually travelled. The surveyor had no authority to change or relocate the road, and, under the circumstances, his direction could not relieve defendant of the knowledge that he was setting his fence in the road.

10. ———: ———: **Suit when Barred.** Each day the obstruction is maintained after ten days from the date of receiving notice, is a separate and distinct offense. And where the obstruction was maintained down to the date of bringing suit, it was not barred because not brought within a year after the expiration of said ten days.

Appeal from Cooper Circuit Court.—*Hon. J. G. Slate,* Judge.

AFFIRMED.

*John Cosgrove* and *Dan Cosgrove* for appellant.

*W. G. & G. T. Pendleton, Roy D. Williams* and *W. F. Johnson* for respondent.

TRIMBLE, J.—For the second time this case is before the court. It was brought here the first time by plaintiff who appealed from the judgment of the trial court sustaining a demurrer to the evidence. The

judgment was reversed and the cause remanded as will appear from the opinion of this court reported in 174 Mo. App. 573. This time the defendant has appealed. The suit is under section 10533, Revised Statutes 1909, which provides that if any person shall knowingly or willfully obstruct or damage any road by fencing upon the right of way of the same, the road overseer of the district shall verbally or in writing notify him to remove such obstruction forthwith, and if said person does not remove such obstruction within ten days after being notified, he shall pay the sum of five dollars for each and every day after the tenth day such obstruction is maintained or permitted to remain, to be recovered by suit brought in the name of the road district. It was brought July 12, 1912, to recover five dollars a day from and after ten days from March 22, 1911, the date when defendant was notified by the road overseer to remove the obstruction. The court, however, instructed the jury that if they found the issues for the plaintiff, the penalty could not be assessed for any day earlier than within one year next before the filing of the suit and that the aggregate amount assessed could not in any event include more than one year less one day. Among the facts which the jury were required to find before they could return a verdict for plaintiff was that defendant had maintained the obstruction up to the time of filing the suit. The limitation on the amount recoverable above noted was placed there by the trial court as a precaution in view of his ruling that the case was governed, as to limitation, by section 4946, Revised Statutes 1909. The jury returned a verdict assessing the penalty at $1820, which was the penalty for 364 days at $5 per day.

It is urged that the notice shown in evidence did not comply with the statute in that it was not given by the road overseer himself. But the evidence was that the overseer made out and officially signed two duplicate written notices to the defendant notifying

him of the obstruction and to remove it forthwith and that if it was' not removed in ten days, he would be liable to the penalties prescribed by the statute. The overseer gave these duplicates to his son with directions to read and deliver one of them to the defendant. This the son did on March 22, 1911. Thereafter, the road overseer himself saw the defendant and had a talk with him about the fence in the road. The requirement of the statute as to notice was complied with. It might be remarked here that inasmuch as the former holding of this court on the demurrer to plaintiff's evidence necessarily included a holding that that notice was sufficient, this perhaps made the question of the sufficiency of the notice a matter adjudged, since that holding was a direct ruling on every question presented, or that could have been raised, under the demurrer. [Dunn v. Nicholson, 125 Mo. App. 725; Roth v. City of St. Joseph, 167 S. W. 1155.] But, be this as it may, the notice contemplated by the statute was given, and was sufficient.

When the road was obstructed, and the notice given, Road District No. 5 was in existence and controlled the road in question. After the service of the notice by the overseer, that district was absorbed and swallowed up by the Boonville Special Road District. Defendant on this account challenges the latter's right to sue. This, however, was decided adversely to defendant on the former appeal.

The constitutionality of section 10533 is sought to be attacked on the ground that the statute gives the penalty to the road district while the Constitution says it shall go to the school fund. Whether the statute says anything about where the penalty shall go, but merely provides a method of procedure for its recovery, is a question with which we have nothing to do since a decision of it either way would involve the question whether or not the section came within the constitutional inhibition, and jurisdiction to pass on

such question is in the Supreme Court. But the latter
has held that a constitutional question is not involved
in a case unless it was raised in the trial court. And
then it should be raised "timely in the course of or-
derly procedure." [Miller v. Connor, 250 Mo. 677,
l. c. 684; Bennett v. Missouri Pacific Railway, 105 Mo.
642.] No such question was raised in the trial of
the case nor is it mentioned in the motion for new
trial. In fact, the answer asserts that the penalty
belonged to the former District No. 5. Defendant
cannot, therefore, at this late hour, obtain any benefit
from the point now made for the first time.

The road alleged to be obstructed is called the
Little Ferry Road and runs west from the top of
"Bell's Hill" at said road's intersection with the old
"Santa Fe Trail" now "The State Highway." De-
fendant owns land south of the Little Ferry road ex-
tending from the above intersection west for a con-
siderable distance. The obstruction complained of
consists of a post and wire fence which defendant set
commencing at the above intersection and running west
to inclose his land. It is claimed that from the inter-
section west for a distance of 160 or more yards the
fence is in the road.

The pleadings admit that the road was originally
established sixty feet in width. This was done many
years ago. It was at least before 1848 because at
that time and continuously thereafter the road has
been open to and used by the public. How long it was
used before that no one now living knows.

Defendant bought the land abutting the road on
the south in 1885. After buying, he moved his fence
two or three times, a few feet at a time, outward to
the north and closer to the fence on the other side
of the road. The last time he moved his fence was
six or eight years before the trial. Having been trav-
eled so long, the roadway had become worn down until
there were then, and now are, banks three or four feet

high on each side. The fence, as last located by defendant, leaves the roadway twenty-eight feet wide from this fence to the one on the opposite side at or near the top of the north bank. From the top of the south bank north to Fuser's fence is twenty or twenty-five feet while from the foot of said bank north to the said fence is fourteen feet, said space so inclosed by said fence is comparatively level except for a depression taking the form of a nearly filled ditch along the roadside.

Defendant's claim that his fence does not encroach upon the road is based upon the theory that the road in question was located so that its center line is upon and coincident with the east and west center line of section 5, and that although the road was originally established sixty feet in width, yet in August, 1874, the county court, upon the petition of landowners along the road, reduced its width to forty feet. Consequently, his position is that as the offending fence is twenty or twenty-one feet from this center section line, and therefore in the road as originally established, yet it is still outside of the twenty feet constituting the south half of the road as reduced, and the fence is, therefore, not an obstruction.

The evidence, however, does not show that the road was established on the section line as its center. No surveys establishing the road were introduced to show that this was so, and defendant's surveyor admitted that none would show such to be the fact. There was evidence on the contrary, however, which tended to show that the larger portion of the road was south of the section line. This was abundantly shown to be the fact so far at least as the actual location of the road upon the ground is concerned. The surveys of lands adjoining the road did not state that the section line was in the center of said road, and for that reason, if for no other, they were not evidence that it was. Consequently, the court did not err in refusing to ad-

mit such surveys offered by defendant to prove that the section line was in the center of the road. But defendant contends, in effect, that if the road was not originally established on the section line as its center, it was afterwards relocated and placed thereon by the county court in February, 1899. This order of the county court had no reference to the road at the place in controversy but referred to a change in the road some distance west where the road made a crook or turn to the northwest upon the land of John Labo and then turned southwest on his land and continued in the same westerly line as before. The county court's order was made upon the petition of John Labo who sought to merely straighten this crook in the road under section 7818, Revised Statutes 1889, now section 10444, Revised Statutes 1909, authorizing the county court, upon the petition of one wishing to cultivate or enclose land through which the road may run, "to turn the road upon his own land or upon the land of any other person consenting thereto at his own expense." The order of the county court nowhere states that the road where straightened shall be located with its center line upon said section, but, if it did, that could not affect the location of the road at a point some distance east of the crook and away from the land of the petitioner, and such order of the county court could have no effect to relocate the road at the place in controversy. So that defendant's contention that the center of the road was on the section line is not shown or supported by any evidence.

As to the other branch of defendant's contention, namely, that the county court in August, 1874, reduced the width of the road to forty feet, it may be said that conceding for the sake of the argument that the county court had authority to reduce the width of the road, there is no evidence showing that anything was done thereunder either in changing its location or in reducing the width of the road as actually existing upon

the ground. On the contrary, a number of witnesses testified that when defendant moved his fence the last time he placed it in the wagon track, being that part of the road which had been actually traveled and used by the public continuously as far back as they could remember, this being from forty to sixty-five years. There is practically no dispute over this, but if there were, inasmuch as the jury has found that defendant obstructed the road, we must accept the above as true. It may be observed also that the proceeding to reduce the width of the road was had pursuant to authority given the county court by section 5 of an Act approved March 23, 1868. [Laws of 1868, page 150.] But this was expressly repealed March 18, 1872. [2 Wagner's Statutes, p. 1230, sec. 72.] And no such authority was on the statute book in August, 1874, when the county court made the reducing order. Whether the county court had any statutory authority to reduce the width of the road would doubtless be immaterial upon the question of whether or not defendant *knowingly* obstructed the road, if anything had been done to reduce the width of the road as actually existing on the ground. However, there is no evidence showing that anything of the kind was done pursuant to said county court's order; and if defendant put his fence in that part of the road actually and continuously used by the public for so many years, the county court order, whether valid or void, could not relieve defendant of the knowledge that he was obstructing the road. The trial court ruled and instructed the jury that the reduction of the width of the road by the county court was valid, but submitted to the jury the question whether or not the ground inclosed and occupied by defendant's fence had become a public road by dedication, prescription, or adverse user. And the jury were told that if such were the fact, then the order of the county court availed nothing in the case. The

jury found for defendant even upon the theory that the road was legally reduced to forty feet by the county court. We do not agree with defendant that there was no evidence to show a valid common-law dedica-tion of the ground in question as a road. Jones, who built the first fence on top of the south bank many years ago, and, for more than ten years thereafter allowed the public to continuously use and travel over the ground now occupied by the defendant's offending fence, is presumed to have acquiesced in such use and intended to dedicate the used ground as a road. [Kansas City Milling Co. v. Riley, 133 Mo. 574, l. c. 584.] And the defendant himself afterwards in 1885 or shortly thereafter, by building his fence "half way down the bank" but still much further south of the present fence, thereby evinced his consent to all north of said first fence being used as a road. And the fact that the public traveled and used the land north of said fence continuously thereafter for many years more than the requisite prescriptive time, created upon the land a public highway by prescription. [State v. Transue, 131 Mo. App. 323; Laclede-Christy Clay Products Co. v. St. Louis, 250 Mo. 446, l. c. 460 and cases cited.]

So that defendant's position that his fence is not in the road is untenable. His major premise, that the road is located equally on each side of the section line, was not established; and even though his minor prem-ise—that the road was legally reduced to forty feet—be conceded, still it was so reduced only on paper, because during the eleven years from August, 1874, to 1885, when defendant bought his land, the public continued to travel over and use the ground where the offending fence now stands, and continued thereaf-ter to do so until 1907, when said fence was erected directly in the wagon track. And in addition to this, the ground occupied by the fence had been traveled continuously from 1848 and prior to that time.

It is urged that error was committed in not allow-
ing defendant to show that he had had the section line
surveyed by the county surveyor and that the latter
had pointed out a line twenty feet south of the section
line as the true line of the road and where he could
set his fence. But this officer had no power to change
or relocate the road. It was in actual existence upon
the ground and had been for many years. The road-
way was worn into the earth and the wagon track was
plainly discernible. Hence, the direction from the sur-
veyer could not relieve defendant of the knowledge
that he was setting his fence in the road. It was held
in State v. Wells, 70 Mo. 635, a prosecution for ob-
structing a road, that it was no defense to show that
defendant did not know the road was legally estab-
lished; and in State v. White, 96 Mo. App. 34, l. c. 39,
that, if defendant personally participated in putting
the fence in the road—which is the fact here—defend-
ant's notion as to the legality of the road at that point
is immaterial.

Defendant also contends that the cause of action
is barred by section 4949, Revised Statutes 1909. The
section does not apply to cases of this character. It
is not a suit to recover a "forfeiture given in whole
or in part to any person who will prosecute for the
same." The only other limitation statute which might
be applicable is section 4946, Revised Statutes 1909.
But under the terms of section 10533 each day the ob-
struction is maintained, after the ten days' notice, con-
stitutes a distinct offense penalized by a forfeiture of
$5. The offense was therefore a continuing one, and
the evidence showed that it continued down to the
day suit was filed. It was held in State v. Gilbert, 73
Mo. 20, that in such case, a prosecution for obstruct-
ing a public road was not barred. The trial court
applied the statute by requiring the jury to find that
the obstruction was maintained down to date of the

suit, and limiting the amount recoverable, in that event, to within a year prior to the institution of the suit.

The statute is penal and of course must be strictly construed and the case against defendant must come clearly within the terms thereof. We have carefully gone over the entire record repeatedly but are unable to find any place where plaintiff has not brought the case strictly within the terms of the statute. That the penalty is severe is undoubtedly true. But no doubt the Legislature intended it should be so in order that the State's highways should not be unlawfully encroached upon in the manner shown in the evidence. The severity of the statute is a matter for the Legislature, not for us. We are, therefore, without authority to disturb the verdict, and the judgment is affirmed. All concur.