Rickey HARRIS, Appellant,

v.

Jan HUNT, Chair of the Missouri Real Estate Commission, et al., Respondents.

No. ED 82999.

Missouri Court of Appeals,
Eastern District,
Division Three.

Dec. 2, 2003.

1. All statutory references are to RSMo 2000    unless otherwise indicated.

Robert E. Jones, Adam R. Lorenz, Clayton, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., R. Lucas Boling, Jefferson City, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

Rickey Harris ("Harris") appeals the judgment affirming the decisions of the Missouri Administrative Hearing Commission ("AHC") and the Missouri Real Estate Commission ("MREC") suspending Harris's real estate licenses for two years followed by a three-year period of probation. Harris claims that the trial court erred in affirming the suspension and subsequent probation imposed upon his licenses because he did not intentionally conceal material facts in the course of his real estate business. Additionally, Harris asserts that there was insufficient evidence of his bad character or reputation to support the trial court's affirmation of the decisions. Harris also claims that the standards contained in the statutory provisions allowing for disciplinary action against him are unconstitutionally vague as applied to him. We affirm.

On appeal of an agency decision, we review the decision of the agency. *Forbes v. Missouri Real Estate Comm'n*, 798 S.W.2d 227, 229 (Mo.App.1990). We will uphold the decision of the AHC if it is supported by competent and substantial evidence upon the record as a whole. *Id.* We consider the evidence in a light most favorable to the decision, and we defer to the factual determinations of the agency. *Id.* "The weight of the evidence is therefore not in issue on judicial review of an administrative hearing decision." *Id.*

Viewed in a light most favorable to the decision, the evidence shows the following. Harris was in the real estate business, and he bought, renovated and re-sold homes for profit. In December of 1990, Harris borrowed $49,000 from Julie Hollenberg Duke ("Duke") to purchase property and sell it for a profit. Duke testified that she relied on Harris's knowledge and experience in the real estate business in

making her decision to enter into the loan. Harris told Duke that he would help guide her through the loan process. The loan from Duke to Harris was to be secured by a second deed of trust in favor of Duke on the eight pieces of property owned by Harris. Although Duke had only a second deed of trust on the properties, Harris assured her that there was sufficient equity in the homes to cover the amount of her loan. Harris told Duke he would record the deed of trust. Duke obtained the money loaned to Harris by mortgaging her home. Harris agreed, by a promissory note, to pay the principal on the mortgage directly to the bank, and he would make interest payments to Duke. Initially, Harris made the payments required by the promissory note; however, he eventually stopped payment to both the bank and Duke. The bank began foreclosure proceedings on Duke's home. Duke hired counsel to stop the foreclosure on her home, and found out that Harris had never recorded the deed of trust on the properties which secured Duke's loan to him. Additionally, she found out that several of the properties had been sold with no notice to her. Duke filed suit against Harris for breach of the promissory note, fraud, equitable lien and for negligent misrepresentation. A consent judgment for $69,720 on the breach of promissory note count was entered, and the remaining counts were dismissed with prejudice. Ultimately, Duke settled with Harris for $35,000.

On June 21, 2001, the MREC filed a complaint with the AHC, seeking to discipline Harris's real estate licenses. A hearing was held, and the AHC entered its findings of fact and conclusions of law. The AHC found that Harris did not make a substantial misrepresentation concerning the filing of the deed of trust; however, he did intentionally conceal material facts by selling the properties which secured his

loan without providing notice to Duke. Additionally, the AHC found that while Harris was not Duke's real estate agent or broker, he was subject to discipline for his actions in conducting his real estate business. Finally, the AHC found that Harris failed to exercise good moral character or a good reputation for honesty, integrity and fair dealing. The MREC subsequently entered amended findings of fact and conclusions of law, incorporating the findings of the AHC, and ordering Harris's licenses suspended for two years to be followed by a three-year period of probation. A petition for review of this decision was filed with the Circuit Court of St. Louis County, and a judgment was entered affirming the decisions of the AHC and the MREC. Harris appeals.

In his first point on appeal, Harris claims that the trial court erred in affirming the decision of the AHC because the alleged actions did not occur in the course of Harris's real estate business. Additionally, he argues that his actions with respect to the sale of the properties securing his loan from Duke did not constitute an intentional concealment of material facts because Duke's interest was secondary and she was not entitled to notice.

Pursuant to section 339.100.2(2) RSMo (2000)[1], the MREC may file a complaint with the AHC when a licensee has concealed material facts in the conduct of his business. Initially, Harris argues that his activities do not constitute the conduct of real estate business to subject him to discipline as provided in Chapter 339 of the Missouri Revised Statutes. Specifically, Harris claims that he did not represent Duke in any fiduciary capacity. However, "[j]ust because the broker was not acting for a principal should not allow him nor his type of conduct to go without discipline from the commission." *Missouri Real Es-*

*tate Com'n v. McGrew*, 740 S.W.2d 254, 255 (Mo.App.1987).

Throughout the course of the transaction with Duke, Harris acted in the course of his real estate business. Harris admitted that he was in the real estate business. He bought property to renovate and sell for profit. He obtained real estate licenses to access listings for this business. The loan obtained from Duke was to be used to purchase property to sell at a profit in furtherance of Harris's real estate business, not purely for personal business. He expected to make a profit from the purchase and sale of the real estate for which he obtained the loan. There was evidence that Duke relied upon Harris's knowledge and experience in the real estate business upon entering into the loan. Harris told Duke he would help her through the loan process. He also assured her that there was sufficient equity in the properties on the deed of trust provided to Duke to secure the loan. Harris later sold the properties without notice to Duke. As a result of the foregoing, there was substantial evidence that Harris was acting in the course of his real estate business in the transaction with Duke to support the finding of the AHC. Therefore, he was subject to discipline for such actions.

■ Next Harris argues that he did not conceal material facts concerning the sale of the properties securing his loan. Harris claims that because Duke's interest in the properties was secondary, she was not entitled to notice of the sale or transfer of the properties. Therefore he could not have intentionally concealed the sale of the properties from her. According to Duke's testimony, Harris assured her that although she had a secondary interest in the property, there was sufficient equity to secure the loan. As a result, Duke be-

1. All further statutory references are to RSMo (2000), unless otherwise indicated.

lieved that she would be able to get the money by executing the deed of trust or foreclosing on the properties if there was any problem with repayment of the loan. However, Harris sold the properties without notice to Duke. Regardless of whether Duke was legally entitled to notice, Harris's assurances to Duke concerning the security of the loan, and his subsequent sale of the properties with no notice to Duke, constitute substantial evidence sufficient to support the AHC's finding that Harris intentionally concealed material facts from Duke in the course of their transaction.

■ Harris also attempts to use the release executed as part of the settlement of Duke's breach of promissory note claim to prevent the AHC from finding that he intentionally concealed material information from Duke. We find this assertion without merit. Duke did, in fact, release Harris from further claims or causes of action relative to their dispute upon his payment of $35,000 in satisfaction of the consent judgment. However, the complaint in the instant case was filed by the MREC, not Duke. Duke's release of Harris from liability for fraud or misrepresentation does not preclude the MREC from pursuing a disciplinary action against Harris pursuant to section 339.100. Point denied.

In his second point, Harris asserts that the trial court erred in affirming the decision of the AHC because he established evidence of his good moral character and good reputation, and there was no evidence of his bad character or reputation.

■ Section 339.100.2(15) provides that the MREC may file a complaint with the AHC if a licensee has committed an act "which would otherwise be grounds for the commission to refuse to issue a license under section 339.040." Section 339.040.1(1) and (2) state that licenses shall only be given to people with good moral character and a good reputation for honesty, integrity and fair dealing. The AHC found that Harris's intentional concealment of material facts in the conduct of the real estate transaction with Duke was an indication of a lack of good moral character. As we have discussed above, the finding concerning Harris's concealment of material facts was supported by substantial evidence. Additionally, the AHC found that Harris's failure to record the deed of trust securing the loan, and his sale of the properties without notice to Duke was substantial evidence of Harris's failure to exhibit honesty and fairness in his transaction with Duke. Although Harris presented witnesses who testified that Harris conducted his business with them in an honest and good faith manner, there was substantial evidence to the contrary from his dealings with Duke, as discussed above. The AHC's findings concerning Harris's moral character and good reputation for honesty, integrity and fair dealing in his conduct of the transaction with Duke was, therefore, supported by the evidence. Point denied.

■ In his third and final point on appeal, Harris argues that the standards contained in section 339.040.1(1) and (2) are unconstitutionally vague as applied to him. Specifically, Harris claims that the standards set forth in the statute fail to provide reasonable notice as to what activity they forbid, and they fail to provide guidelines to insure that the statute is enforced in a nonarbitrary and nondiscriminatory way. The MREC argues that this constitutional argument was not preserved as to the term "good faith;" however, we note that this term is not contained in the provisions of the statute complained of by Harris. Harris challenges the terms "good moral character," and "good reputation for honesty, integrity, and fair dealing," con-

tained in section 339.040.1(1) and (2). He claims that there was no way for him to anticipate the application of these provisions to his particular transaction.

 "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Cocktail Fortune, Inc. v. Supervisor of Liquor Control,* 994 S.W.2d 955, 957 (Mo. banc 1999). A law will be considered void as a result of vagueness where it does not give fair and adequate notice of prohibited conduct. *Id.* The "void for vagueness" doctrine serves to protect against arbitrary and discriminatory enforcement of laws. *Id.* "The test in enforcing the doctrine is whether the language conveys to a person of ordinary intelligence a sufficiently definite warning as to the proscribed conduct when measure by common understanding and practices." *Id.* Additionally, where the law can be supported by any reasonable or practical construction, it will be valid, and the courts must strive to give effect to it. *Id.* Laws imposing civil penalties rather than criminal are also afforded more tolerance because the "consequences of imprecision are qualitatively less severe." *Id.*

Although it may be possible to imagine a situation in which it is unclear whether a person's conduct is prohibited by these terms, vagueness challenges are not held to such a standard. "[I]t is not necessary to determine if a situation could be imagined in which the language used might be vague or confusing. . . ." *Cocktail Fortune, Inc.,* 994 S.W.2d at 958–59. The language challenged must be evaluated by applying it to the facts in the present case. *Id.* Harris defaulted on his loan from Duke, after assuring her that the security provided by her secondary interest in several properties would be sufficient to cover the loan. He failed to record the deed of trust in favor of Duke which secured the

loan, and then sold or disposed of the properties without providing her any notice. The terms "good moral character," and "good reputation for honesty, integrity and fair dealing," are all commonly understood by people of ordinary intelligence to exclude conduct in which a person conducts himself as Harris did in his transaction with Duke. Point denied.

The judgment of the trial court is affirmed.

WILLIAM H. CRANDALL JR. and LAWRENCE E. MOONEY, JJ., concur.