Richard D. WEINSTEIN, Appellant,

v.

KLT TELECOM, INC., Respondent.

No. SC 87816.

Supreme Court of Missouri,
En Banc.

May 29, 2007.

Rehearing Denied June 26, 2007.

Kenneth J. Mallin, Ann K. Covington, Kimberly A. Mohr, St. Louis, Edward L. Dowd, Jr., Clayton, for Appellant.

R. Kent Sullivan, Erin N. Schmidt, Kansas City, Gretchen Garrison, St. Louis, for Respondent.

STEPHEN N. LIMBAUGH, JR., Judge.

This case arises out of a "put option" agreement between Richard D. Weinstein (Weinstein) and KLT Telecom, Inc. (KLTT), which gave Weinstein the option to sell certain shares of stock to KLTT at a stated price and obligated KLTT to buy those shares. The central question is whether there was a failure of consideration for Weinstein's exercise of the option that relieved KLTT of its obligation to buy the shares because, at the time the option was exercised, the shares had lost all their value. The trial court granted KLTT's motion for summary judgment and overruled Weinstein's motion for summary judgment. Weinstein appealed, and after opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10. Reversed and remanded.

Weinstein is the former president and majority shareholder of DTI, Holdings, Inc. (DTI), and KLTT is a wholly-owned subsidiary of KLT, Inc., which is in turn a wholly-owned subsidiary of Great Plains Energy, Inc. In December 2000, Weinstein and KLTT entered into a contract, known as the "Second Amended Agreement," wherein Weinstein sold approximately 20 million shares of his common stock in DTI to KLTT for a purchase price of approximately $32 million. This transaction gave KLTT majority ownership and control of DTI. As part of this contract, KLTT also granted Weinstein an option to sell his remaining 9,906,064 shares of common stock in DTI to KLTT at any time between September 1, 2003, and August 31, 2005, for either their appraised value or a minimum of $15 million. This option was memorialized in an attachment to the Second Amended Agreement, known as the Remaining Shares Put Option Agreement. Upon execution of the Second Amended Agreement and the attached Put Option Agreement, and as required under those documents, Weinstein deposited a stock certificate, evidencing his remaining DTI shares, with an agreed-upon escrow agent. Under the Put Option Agreement, the es-

crow agent was to deliver these shares to KLTT in the event Weinstein exercised the option.

At the time the agreements were executed, an accounting firm retained by KLTT valued DTI at between $300 and $500 million. However, approximately a year later, in December 2001, DTI filed a voluntary petition for bankruptcy. DTI never emerged from bankruptcy, and on June 11, 2003, the Bankruptcy Court entered an order canceling and extinguishing all equity interests in DTI. As a result, the value of the shares of common stock deposited with the escrow agent was reduced to zero.

Then on September 2, 2003, Weinstein exercised his option in accordance with the terms of the Put Option Agreement by delivering written notice to the escrow agent. In this notice, Weinstein waived any requirement that KLTT appraise the remaining shares of DTI and, instead, elected to receive the aggregate floor value of $15 million. Thereafter, KLTT advised both Weinstein and the escrow agent that it had no obligation to purchase Weinstein's remaining DTI shares or to pay the $15 million floor price under either the Put Option Agreement or the Second Amended Agreement. Consequently, Weinstein filed this suit for breach of contract, seeking recovery of the $15 million. In response, KLTT then asserted numerous affirmative defenses premised on the bankruptcy of DTI. In particular, KLTT claimed that there was a failure of consideration under the Put Option Agreement because Weinstein's equity interests were extinguished in the bankruptcy proceedings and that Weinstein "had nothing of value to offer KLTT in exchange for its promise to pay him $15 million." As noted, the trial court entered summary judgment in favor of KLTT.

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(6). An order granting or denying summary judgment is a matter of law that is reviewed *de novo*. *ITT Commercial Fin. Corp. v. Mid-America Marine Supply*, 854 S.W.2d 371, 376 (Mo. banc 1993).

■ This case turns on the question of when the adequacy of the consideration for the exercise of the put option is to be measured—whether at the time the option agreement was executed or at the time the option was exercised. If the former, the consideration was adequate because the stock was worth millions of dollars; if the latter, the consideration was inadequate, and indeed it failed altogether, because the stock was worthless. Given the nature of the Put Option Agreement—that it was simply a gamble, a lawful wager made between sophisticated parties as part of an arms-length transaction—consideration must be measured at the time the agreement was executed. The bargain was for Weinstein to sell and KLTT to buy the remaining shares at a minimum of $15M, whatever their actual value, and KLTT implicitly took the risk that the shares might lose value or even lose all their value. Having borne that risk, KLTT nonetheless would receive full benefit of its bargain when Weinstein, through the escrow agent, tendered the shares, whatever their value. Weinstein, on the other hand, though he fully performed his obligations under the agreement by tendering the shares, would not receive the full benefit of his bargain if the consideration is measured at the time the option agreement was exercised.

■ This conclusion is supported by the general principles of contract law that consideration must be measured at the time

the parties enter into their contract and that the diminished value of the economic benefit conferred, or even a complete lack of value, does not result in a failure of consideration. *See, e.g., Union Pac. R. Co. v. KC Transit Co.,* 401 S.W.2d 528, 536 (Mo.App.1966) ("If promisor gets what he bargained for, there is no failure of consideration although what he receives become less valuable or of no value at all."); *Vorchetto v. Sappenfield,* 223 Mo.App. 460, 14 S.W.2d 685, 686 (1929) ("[I]t is well settled that because one suffers a disappointment in his bargain a failure of consideration does not arise...."). Although there are no Missouri cases in the context of put option agreements, the commentators and the cases from other jurisdictions that do address option agreements are in accord. *See, e.g.,* 12A FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS, sec. 5575 ("The adequacy of consideration is to be determined with reference to the date of the option rather than the date of its exercise."); *In re Air Vermont, Inc.,* 44 B.R. 440, 445 (Bankr.D.Vt.1984) ("[T]o determine whether an option to purchase is for nominal consideration the option price should be compared with the fair market value of the subject matter, not as of the time the option is to be exercised, but as of the formation of the agreement."); *Polinsky v. Vaughan,* 268 Cal.App.2d 183, 194, 73 Cal.Rptr. 764 (Cal.App.1968) ("In case of the exercise of an option, the value at the time the option was given is considered the measure of the adequacy of the consideration.").

■ Citing *Suhre v. Busch,* 343 Mo. 170, 120 S.W.2d 47 (1938), and *Ragan v. Schreffler,* 306 S.W.2d 494 (Mo.1957), KLTT maintains that "[i]n every option contract, there are essentially two separate contracts—a contract to keep an offer to purchase or sell open for a specified period of time and, once accepted, a separate con-

tract to purchase or sell the property—each of which must be supported by its own consideration and performance." According to KLTT, then, the separate contract in this case that arose when Weinstein exercised the option failed for lack of consideration because by that time the shares he tendered had no value. *Suhre* and *Ragan,* however, should be read only for the unremarkable proposition that upon exercise of the option, the underlying unilateral option contract ripens into a bilateral contract in which both parties must fulfill their respective obligations as set out in the option contract itself. There are no new terms in the so-called separate contract—it is wholly dependent on the terms of the underlying option contract. To be sure, consideration is required, but that is supplied, as it is in this case, by the fact that the optionee is obligated to tender the shares of stock and that the shares of stock had substantial value at the time the option contract was executed. That does not mean, however, that the value of the shares is to be remeasured at the time the option is exercised and the shares are tendered. Again, to hold otherwise, KLTT would be afforded the benefit of its bargain while Weinstein would lose the benefit of his bargain.

■ KLTT emphasizes that the problem is not the adequacy of the consideration at the time of the option agreement, but rather the very existence of consideration at the time the option was exercised. There is a total failure of consideration, KLTT explains, where "consideration, once existing and sufficient, has become worthless or ceased to exist." The dissent picks up on this argument by citing to *Lindsay v. Sonora Gold Min. & Mill. Co.,* 196 S.W. 764 (Mo.1917), and Williston on Contracts, for the proposition that a total failure of consideration is a complete defense to enforcement of a contract. But this argu-

ment misses the point. The authorities cited refer to ordinary, conventional, bilateral, executory contracts, not option contracts. In *Lindsay*, for example, the contract in question obligated Sonora Gold Mining Company to sell certain shares of stock to Lindsay, but Lindsay was excused from his obligation because the shares proved to be worthless both at the time the contract was entered and at the time performance was due. In contrast, and as noted, option contracts, by their very nature, are wagers, in which the parties risk that the value of the consideration may fall or may be lost altogether before performance is due. And it is for that reason that the presence or absence of adequate consideration must be determined at the time the option contract was entered, not at time of performance.

Finally, KLTT also seems to couch its argument as a failure of performance as opposed to a failure of consideration, in that the complaint seems to be that Weinstein cannot deliver shares of stock that do not exist. However, in the present context, the failure of performance is simply another way of referring to the failure of consideration. In any event, Weinstein did not fail to perform. The shares, though worthless, do in fact exist, and they were tendered to KLTT through the escrow agent. In short, KLTT, having lost its lawful wager on the value of the shares, cannot now complain.

The judgment entered in favor of KLTT is reversed. The denial of summary judgment in favor of Weinstein is not reviewable on appeal. The case is remanded.

WOLFF, C.J., STITH, PRICE and TEITELMAN, JJ., concur.

WHITE, J., dissents in separate opinion filed.

RUSSELL, J., concurs in opinion of WHITE, J.

RONNIE L. WHITE, Judge, dissenting.

I respectfully dissent. The majority creates a factual and legal fiction resulting in a $15 million windfall to a sophisticated investor. Weinstein's shares were extinguished by a federal bankruptcy court at a time when he, as shareholder, bore that risk. When Weinstein later attempted to exercise the option, the shares no longer existed, resulting in a total failure of consideration.

The majority correctly notes that the *adequacy* of consideration is assessed at the time of the option agreement, not at the time of the exercise of the option.[1] However, in the cases cited by the majority and others discussed in Fletcher Cyclopedia,[2] the consideration diminished in value but continued to legally exist. *Polinsky* involved an option contract in which consideration consisted of corporate stock that had significantly depreciated but still legally existed. In *Union Pac. R. Co. v.*

1. *In re Air Vermont, Inc.*, 44 B.R. 440 (Bankr. D.Vt.1984); *Polinsky v. Vaughan*, 268 Cal. App.2d 183, 73 Cal.Rptr. 764 (Cal.App.1968); 12A Fletcher Cyclopedia of the Law of Private Corporations, s5575.

2. In *Malloy v. Short*, 1991 WL 86205 (Conn.Super. May 9, 1991), the insolvent company and its stock still legally existed, and the purchase agreement had already been executed, therefore the buyer was not excused

from paying the balance of the note. In *Napoli v. Cavalier*, 163 A.2d 824 (D.C.App.1960), the insolvent company and its stock still legally existed, therefore, the buyer (also joint owner) could not claim lack of consideration. Also see *Johnson v. Dodgen*, 451 N.W.2d 168 (Ia.1990), where a buyer of stock in a bank that closed 15 years after the transaction could not claim lack of consideration to avoid remaining payments on the promissory note.

*KC Transit Co.,*[3] the consideration was the construction of transportation facilities. In *Air Vermont,* the consideration was a depreciated airplane. In *Vorchetto v. Sappenfield,*[4] the consideration was depreciated land. The common denominator of the foregoing cases is that consideration, though perhaps severely diminished in value, still legally existed when performance became due.

The problem, however, is not the *adequacy* but rather the very *existence* of consideration at the time of the attempted put. The majority pretends that "the shares, though worthless, do in fact exist." On the contrary, the shares were, in law and in fact, extinguished by a federal bankruptcy court and, therefore, no longer in existence.[5] Only the paper certificate remains, and, by order of the bankruptcy court, it represents nothing at all. The majority's disregard for this reality causes one to wonder under what circumstances it would ever recognize shares as cancelled, if not by order of a federal court.

WILLISTON ON CONTRACTS explains the difference between worthless and non-existent: "Although many courts would undoubtedly draw the line and hold that the surrender of a worthless paper, having neither present nor potential intrinsic value, is not consideration, most courts, even today, would follow the rule that surrender of a paper, though it turns out factually to be valueless, can serve as consideration for a promise, *so long as there is some possibility, though dubious or completely uncertain, that it might have at least some value*" (emphasis added).[6] Weinstein's

claim does not succeed using either of these approaches. Under the first, Weinstein's paper certificate, which the majority recognizes as worthless, is not consideration. Under the second, because the shares were legally extinguished by a federal court, there is no possibility—dubious, uncertain, or even theoretical—that the shares have any value whatsoever. Ninety years ago, this Court instructed as follows:

"Where the failure of consideration is total, as where nothing of value has been received by the defendant under it and the plaintiff cannot perform it ... the defendant may plead want or failure of consideration. However, mere inadequacy in the value of a thing bought or paid for is not a want or failure of consideration. *This covers only total worthlessness to all parties* or **subsequent destruction, total or partial**" (italics in original, bold emphasis added).[7]

In short, the majority ignores this Court's own precedent and treats as non-binding the judgment of a federal bankruptcy court. Respecting the intended legal effect of both, one must conclude that a failure of consideration occurred. The majority's discussion of the law of adequacy of consideration is correct but not applicable to this case. The circuit court's judgment should be affirmed.

---

**3.**   401 S.W.2d 528 (Mo.App.1966).

**4.**   223 Mo.App. 460, 14 S.W.2d 685 (1929).

**5.**   BLACK'S LAW DICTIONARY defines "extinct" and "extinguished" as "no longer in existence or use," leaving no doubt regarding the legal effect of the bankruptcy court's order.

**6.**   3 WILLISTON ON CONTRACTS section 7:21 (4th ed.).

**7.**   *Lindsay v. Sonora Gold Min. & Mill. Co.,* 196 S.W. 764, 766 (Mo.1917).