**STATE of Missouri, et al., Respondents,**

v.

**Stephanie SPILTON, LCSW, Appellant.**

**No. SC 90586.**

Supreme Court of Missouri, En Banc.

June 29, 2010.

Michael J. Sudekum and Alan S. Mandel of Schlueter, Mandel & Mandel LLP, St. Louis, for Appellant.

Jeremiah J. Morgan and Stephanie Gwillim, Attorney General's Office, Jefferson City, for respondents.

WILLIAM RAY PRICE, JR., Chief Justice.

Because there is no genuine issue of material fact as to whether Stephanie Spilton knowingly violated the Medicaid fraud statute and because her constitutional claims fail, summary judgment for the state of Missouri is affirmed.

### Facts and Procedural Background

The Missouri Medicaid Program ("the Program") serves indigent and low-income people pursuant to section 208.201, RSMo (2000).[1] Due to the high volume of claims received by the Program, it has set up a post-payment review system in which a sampling of the submitted claims are reviewed. Stephanie Spilton, who appeals here, is a clinical social worker who has been a licensed Missouri Medicaid Service Provider since 2001. As part of Spilton's licensing procedure, she was required to affirm, in writing, that she would comply with Medicaid rules and regulations as required by the Division of Medical Services and the United States Department of Health and Human Services. These rules and regulations govern the submission of claims for payment, the disclosure of services rendered, and the retention of records. In conjunction with her licensing, the Division of Medical Services gave Spilton a unique Medicaid provider number by which she could submit claims to the Program for reimbursement. Spilton agreed that if she did not comply with the rules of the Program, she was not entitled to reimbursement for her claims.

In 2005, the Attorney General's Medicaid Fraud Control Unit began an investi-

---

1. All references to Sections 191.900 and 191.905 are to RSMo (Supp. 2009).

gation into the claims Spilton submitted during 2004. The investigation revealed that Spilton had committed 325 separate violations of sec. 191.905.1(1),[2] which prohibits knowingly presenting a claim for reimbursement that is false. The state filed suit against Spilton, alleging Medicaid fraud, breach of contract, unjust enrichment, and fraudulent misrepresentation.

In March 2007, after service of a subpoena in April 2006, Spilton met with the Medicaid Fraud Control Unit and ultimately wrote and signed a statement admitting that she submitted claims for services she did not provide. On March 15, 2007, she wrote: "I am responsible for illegal activities." "I am aware I did not follow required procedure." "I cannot explain in any way why I displayed the illegal behavior ... it was 100% wrong for many reasons." "I accept full responsibility." Spilton also confessed in an interview with Medicaid Fraud Unit investigators Robert Hyder II and Melinda Ochoa that she "created patient records" to corroborate the claims she submitted to the state for reimbursement. In October 2008, however, in her response to the state's motion for summary judgment, Spilton asserted the Fifth Amendment privilege against self-incrimination.

In July 2009, the St. Louis County Circuit Court granted the state's motion for summary judgment as to Medicaid fraud. Because the court provided complete relief to the state on count one, it overruled the motion as to the state's other three counts.[3] The trial court awarded the state actual damages in the amount of $45,385, civil penalties in the amount of $1,625,000,

and, pursuant to sec. 191.905.12, treble damages in the amount of $136,155.

Spilton appealed the ruling to the court of appeals, arguing that summary judgment was improper because there was a genuine issue of material fact as to whether she "knowingly" submitted false claims, as required by sec. 191.905.1(1). In addition, she argued that the civil penalties delineated under sec. 191.905.12 violate the due process clauses of the Missouri and United States Constitutions. Her appeal was subsequently transferred to this Court pursuant to Mo. Const. art. V, sec. 11.

### Jurisdiction

Because this case involves a challenge to the validity of a Missouri statute, this Court has exclusive jurisdiction. Mo. Const. art. V, sec. 3.

### Analysis

#### Standard of Review

■ Summary judgment is appropriate if there is "no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Rule 74.04(c)(6); *Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415 (Mo. banc 2007). The required procedure for summary judgment motions is found in Rule 74.04. The party seeking summary judgment must attach "a statement of uncontroverted material facts ... [stated] with particularity in separately numbered paragraphs" and supported "with specific references to the pleadings, discovery, exhibits, or affidavits." Rule 74.04(c)(1). The responding party must then "admit or deny each of the movant's factual state-

---

2. Section 191.905 was amended in 2007. Although Spilton committed the violations in 2004, all parties refer to the subsection numbering as reflected in the 2009 Supplement, so this Court will do the same. There are no substantive differences in subsections 1, 12,

or 14 (formerly 1, 11, and 13) between the original statute and the statute as amended.

3. On appeal, the parties only dispute the trial court order as to count one.

ments in numbered paragraphs." Rule 74.04(c)(1). Denials may not rest upon mere allegations. Rather, the response must "support each denial with specific references to the discovery, exhibits, or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." *Id.* The record is reviewed in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371 (Mo. banc 1993).

### The Statute

Section 191.905.1 sets out what acts constitute Medicaid fraud in Missouri and the civil and criminal sanctions for those acts. Subsections 191.905.1(1–3) provide that a violation occurs by:

1 "Knowingly presenting to a health care payer a claim for a health care payment that falsely represents that the health care payment is claimed was medically necessary, if in fact it was not,"[4]

2 "Knowingly concealing the occurrence of any event affecting an initial or continued right under a medical assistance program to have a health care payment made by a health care payer ...,"

3 "Knowingly concealing or failing to disclose any information with the intent to obtain a health care payment to which the health care provider ... is not entitled, or to obtain a health care payment in an amount greater than what the health care provider ... is entitled."

Subsection 191.900.8 defines "knowingly" to mean that the person "has actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard for the truth or falsity of the information."

Subsections 191.905.12 and 14 set out the civil sanctions for violating the statute. Subsection 12 provides the civil penalties for violations of subsections 191.905.1(1–3):

12 **"A person who violates subsections 1 to 3 of this section shall be liable for a civil penalty** of not less than five thousand dollars and not more than ten thousand dollars for each separate act in violation ... plus three times the amount of damages which the state and federal government sustained because of the act of the person."[5]

Finally, subsection 191.905.14 adds:

14 "The attorney general may bring a civil action against any person who shall receive a health care payment as a result of a false statement or false representation of material fact made or caused to be made by that person. That person shall be liable for up to double the amount of all payments received by that person ... No civil action provided by this subsection shall be brought if ... civil penalties provided by subsection 12 ... have previously been ordered."

Both subsections 12 and 14 provide the *civil* penalties for violating the Medicaid Fraud statute. While subsection 191.905.12 cross-references subsections 191.905.1(1–3)—and therefore provides civil penalties for *knowing* violations of the statute—subsection 191.905.14 provides civil penalties for *unintentional* violations of the statute.

---

4. This is the relevant provision to Spilton's case.

5. Subsection 12 also provides, however, that if the person immediately and fully cooperates with investigators, damages shall be reduced to two times the amount sustained by the government. Emphasis added.

Subsections 191.905(7–8) set out the criminal sanctions for violations of the statute:

7 "A person who violates subsections 1 to 3 of this section is guilty of a class C felony upon his or her first conviction, and shall be guilty of a class B felony upon his or her second and subsequent convictions . . ."

8 "Any natural person who willfully prevents, obstructs, misleads, [or] delays . . . the communication of information or records relating to a violation of sections 191.900 to 191.910 is guilty of a class D felony."

### Medicaid Fraud under the Statute

For purposes of this case, the elements of a claim under sec. 191.905.1(1) are as follows: (1) a health care provider must (2) knowingly (3) present a claim for payment that is (4) false. Sec. 191.905.1(1). Spilton does not dispute that she was a licensed health care provider, or that she submitted false claims for reimbursement. She only disputes that she acted knowingly.

Spilton argues that the state was not entitled to judgment as a matter of law. She claims that the trial court erred in granting summary judgment because there is a genuine issue of material fact as to whether she "knowingly" violated sec. 191.905.1(1).[6]

### Spilton's Summary Judgment Argument

█ It is settled Missouri law that the state can rely on circumstantial evidence to demonstrate the "knowing" element of fraud. *Farr v. Hoesch,* 745 S.W.2d 830, 832 (Mo.App.1988). This is because fraud, by its nature, is very difficult to prove by direct evidence. *Allison v. Mildred,* 307

S.W.2d 447, 453 (Mo.1957) (stating that fraud claims are "seldom capable of direct proof"). Here, the state set out, in numbered paragraphs, every material fact as to which it claimed there was no genuine issue. And, pursuant to Rule 74.04(c)(1), it made specific references to the record to demonstrate the lack of a genuine issue suitable for trial.

The state included in its motion for summary judgment both circumstantial evidence and direct evidence that Spilton violated sec. 191.905.1(1) 325 separate times. The state produced more than 300 copies of claims submitted by Spilton that stated, among other things, that she provided individual therapy she did not provide, that she spent longer periods of time with patients than she actually spent, that she followed Medicaid procedures when in fact she did not, and that she treated children she did not even see.

Additionally, the state produced affidavits from Medicaid Fraud Control Unit investigators in which they detailed Spilton's confession to them that the claims she submitted for reimbursement contained false information. Spilton admitted to investigators Robert Hyder II and Melinda Ochoa that "she never provided any individual therapy to numerous recipients," and that when she did provide therapy, "she did not provide it for the full time required by Medicaid rules and regulations." She admitted to investigators Hyder and Ochoa that "she submitted, or caused to be submitted, claims to Medicaid for non-qualifying, individual therapy for numerous recipients," and that "she conducted therapy sessions . . . but the children were not present . . . [so they] could not be billed to Medicaid." And, she admitted to investigators Hyder and Ochoa

---

6. Spilton makes this argument in her first point relied on. This Court will take her second and third points relied on together, as they both go to the validity of subsection 191.905.12.

that "she created patient records which allegedly corroborated the claims submitted."

Further, the state produced a voluntary statement, which Spilton wrote and signed after her interview with investigators, that said:

> "I am responsible for illegal activities of at times not billing accurately. Specifically, I have billed for seeing a client individually, when in fact, I did not see (i.e., provide treatment to) the client. There were instances when I worked individually with the parent(s) and the client/child was not in the session ... in some cases the client/child was present but there were many times when the child was not present ... I am aware I did not follow required procedure for such treatment ... I cannot explain in any way why I displayed the illegal behavior I exhibited nor can I justify this behavior. It was 100% wrong for many reasons ... I accept full responsibility." [7]

■ Pursuant to Rule 74.04(c)(2), a response to a motion for summary judgment must admit or deny each of the movant's factual statements and "support each denial with specific references to the discovery, exhibits, or affidavits that demonstrate specific facts showing that there is a genuine issue for trial." Spilton did not deny a single one of the state's allegations in her response. Instead, she asserted the Fifth Amendment privilege against self-incrimination.[8] While a failure to deny does not automatically entitle summary judgment to the moving party, it does "cause all factual assertions properly alleged and supported by the moving party to be considered as true." *Johnson v. Missouri Bd. Of Nursing Adm'rs,* 130 S.W.3d 619, 626 (Mo.App.2004). Civil defendants who choose to assert their Fifth Amendment privilege take the risk that there will be "nothing to support [their] view of the case and a ... grant of summary judgment will be proper." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure, sec. 2018, at 288 (1994). Here, Spilton has simply not demonstrated that there is a genuine issue of material fact that would preclude summary judgment for the state. A factual dispute that is merely "argumentative, imaginary, or frivolous" is not enough to defeat summary judgment. *ITT,* 854 S.W.2d at 382.

■ Spilton argues in the alternative that if summary judgment was proper, she is not subject to the penalties proscribed in subsection 191.905.12 because it is applicable only to criminal prosecutions, not civil actions brought by the state of Missouri. Instead, she claims that she is subject only to the penalties set out in subsection 191.905.14. However, Spilton draws the wrong distinction between subsections 12 and 14. The plain reading of the statute is that subsection 12 provides civil penalties for *knowing* violations of the statute, and subsection 14 provides civil penalties for

---

7. Spilton does provide, in the written confession, a reason for this. She says that "many families were helped more effectively by my working with the parent(s) [alone]." She also affirms in the statement that she will "never, never, never [again] exhibit illegal behavior," and that she "wishes to pay back to Medicaid what [she] owe[s] them."

8. Though this Court does not need to reach this issue, a trial judge may draw an adverse inference from a litigant's assertion of the Fifth Amendment privilege in a civil case. *Johnson,* 130 S.W.3d 619 (when a defendant remains silent in the face of facts established by the other party, the judge may infer that the defendant is unable to deny the allegations). It was proper for the trial court to adopt an adverse inference from Spilton's assertion of the privilege.

*unintentional* violations of the statute. Because violations of subsections 191.905.1(1–3)—the violations referenced in subsection 12—require a "knowing" act, the civil penalties for those violations are steeper. There is no civil/criminal distinction. Therefore, because there is no genuine issue of material fact as to whether Spilton knowingly violated 191.905.1(1), she is liable for the penalties set out in subsection 12. There is nothing left for a jury to resolve.

### Spilton's Constitutional Argument

▮ Spilton argues that the trial court erred in granting summary judgment in favor of the state because subsection 191.905.12 is unconstitutionally vague. Further, she claims that it violates due process and the prohibition on excessive fines. U.S. Const. Amend. XIV, VIII; Mo Const. art. I, sec. 21. This Court reviews constitutional challenges *de novo*. *Smith v. Brown & Williamson Tobacco Corp.*, 275 S.W.3d 748 (Mo.App.2008).

Spilton brings a void-for-vagueness challenge to the section of the Medicaid Fraud statute that sets out the civil penalties for knowing violations. Subsection 191.905.12 says: "A person who violates subsections 1 to 3 of this section shall be liable for a civil penalty of *not less than five thousand dollars and not more than ten thousand dollars* for each separate act in violation." [9] Spilton argues that subsection 191.905.12 is impermissibly vague because it provides for a range of penalties without instructing the court whether to select the low or high end of the range in any specific case.

▮ However, a statute that provides for a range of penalties is not constitutionally deficient. *See e.g., Battis v. Hofmann*, 832 S.W.2d 937, 941 (Mo.App.1992) (judge in landlord tenant dispute has dis-

cretion to impose penalty within statutory range provided by 535.300 RSMo 1986); *Pratt v. Missouri Pac. Ry. Co.*, 139 Mo. App. 502, 122 S.W. 1125, 1129 (1909) (legislature intentionally gave jury a "wide range" of discretion in railroad negligence statute providing for damages between $2,000 and $10,000). A statute is presumed constitutional unless it "clearly and undoubtedly violates some constitutional provision and palpably affronts fundamental law embodied in the constitution." *Bd. Of Educ. of St. Louis v. State*, 47 S.W.3d 366, 368–9 (Mo. banc 2001). A statute is not vague because it allows for judicial discretion in imposing penalties, but rather when its language does not convey, to a person of ordinary intelligence, adequate notice of what conduct is proscribed. *Cocktail Fortune, Inc. v. Supervisor of Liquor Control*, 994 S.W.2d 955, 957 (Mo. banc 1999). Where a law can be supported by "a reasonable or practical construction," it will be valid. *Id.* Further, "laws imposing civil penalties rather than criminal are ... afforded more tolerance." *Harris v. Hunt*, 122 S.W.3d 683, 689 (Mo. App.2003). The language of subsection 191.905(12) clearly puts all individuals on notice that if they violate subsection 191.905(1), they will be liable for at least $5,000 per violation.

▮ Additionally, as it was applied to Spilton, subsection 12 was neither vague nor arbitrarily enforced. In void-for-vagueness claims, "the challenged language must be evaluated by applying it to facts in the present case." *Id.* (quoting *Cocktail Fortune*, 994 S.W.2d at 958–9). Spilton received the lowest possible penalty allowed by the statute. A statute must provide "fair notice ... of the severity of the penalty that the state may impose." *Philip Morris v. Williams*, 549 U.S. 346,

---

9. Emphasis added.

127 S.Ct. 1057, 1062, 166 L.Ed.2d 940 (2007) (quoting *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996)). This statute does exactly that. There is no question that subsection 12 provides for at least a $5,000 fine per violation. Spilton got a $5,000 fine per violation. Her vagueness argument is without merit.

Finally, subsection 191.905.12 does not contravene the excessive fines provision of the Eighth Amendment or violate due process. Although the Missouri and United States Constitutions prohibit the imposition of excessive fines,[10] the Missouri General Assembly has always had wide latitude to decide the severity of civil penalties for violations of law. *Missouri Public Service Com'n v. Hurricane Deck Holding Co.*, 302 S.W.3d 786 (Mo. App.2010) (outside of constitutional limitations, setting the amount of penalties is within the discretion of the legislature); *State v. Davis*, 830 S.W.2d 27 (Mo.App. 1992); *Boonville Special Road Dist. v. Fuser*, 184 Mo.App. 634, 171 S.W. 962 (1914); *Western Union Tel. Co. v. State of Indiana*, 165 U.S. 304, 17 S.Ct. 345, 41 L.Ed. 725 (1897). Statutory civil penalties are different than jury-imposed punitive damages because statutes define, in advance, "the prohibited conduct and . . . the legislative prescribed penalty." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 702 (Mo. banc 2008) (statute that provides treble damages for the unauthorized practice of law does not violate due process).

Further, statutes—like this one—that provide for treble damages in addition to actual damages sustained are not constitutionally invalid. *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697 (Mo. banc 2008) (holding that sec. 484.020(2),

which awards treble damages for the unauthorized practice of law, does not violate due process).

Civil fines within statutory limits will not be considered excessive, as a matter of law, when the statute authorizing the punishment is valid and when the punishment imposed is within the range prescribed by the legislature. *State v. Polley*, 2 S.W.3d 887, 894 (Mo.App.1999); *State v. Repp*, 603 S.W.2d 569, 571 (Mo. banc 1980) (punishment within the range prescribed by statute cannot be considered excessive). A statutory punishment will not be considered an excessive fine in contravention of the Eighth Amendment unless it is so disproportionate as to "shock the moral sense of all reasonable [persons]." *Barker v. Barker*, 98 S.W.3d 532, 534 (Mo.banc 2003). When a litigant receives the lowest possible penalty proscribed by a statutory range, as Spilton did, the penalty is not excessive. *Missouri Public Service Commission v. Hurricane Deck Holding Company*, 302 S.W.3d 786, 792 (Mo.App.2010) (because the penalty assessed was the lowest amount permitted by the statute, it was not "so disproportionate as to shock the moral sense of all reasonable men").

Finally, it is settled Missouri law that an assessment of $5,000 per violation is not so disproportionate as to constitute cruel and unusual punishment. *State v. Trader Bobs*, 768 S.W.2d 183, 188 (Mo. App.1989) (holding that statute that provides for a fine of $5,000 per violation is not excessive). This Court is unpersuaded that the $5,000–per–violation penalty assessed against Spilton is so grossly excessive as to shock the conscience. A litigant attacking the constitutional validity of a

---

**10.** The term "fine" denotes "payment extracted by the government and payable to the government." *Lilley v. State*, 920 F.Supp. 1035, 1044 (E.D.Mo.1996).

statute bears "an extremely heavy burden." *Linton v. Mo. Veterinary Med. Bd.*, 988 S.W.2d 513, 515 (Mo. banc 1999); *State ex rel. Westfall v. Mason*, 594 S.W.2d 908 (Mo. banc 1980) ("When considering the constitutionality of a punishment statute enacted by our legislature, we presume its validity and those who seek to invalidate it bear a heavy burden of demonstrating that it is ... excessive"). Spilton has not met that burden.

### Conclusion

Because Spilton's arguments fail as a matter of law, and because the trial court did not err in granting summary judgment for the state of Missouri, the judgment is affirmed.

All concur.