## ST. LOUIS POLICE RELIEF ASSOCIATION, Respondent, v. AMERICAN BONDING COMPANY OF BALTIMORE, Appellant.

St. Louis Court of Appeals, June 6, 1917.

1. **PRINCIPAL AND SURETY: Fidelity Bond: Waiver of Signature by Employee.** Where a fidelity bond, by which a surety company agreed to indemnify an employer for loss sustained through the dishonesty of an employee, provided that it was essential to its validity that it be signed by the employee, the company was entitled to have it so signed, but it could waive such right, which it did by issuing and delivering the bond without the employee's signature, by accepting premiums from year to year, and by treating the instrument as one properly executed until a loss occurred.

2. ———: ———: **Construction.** A corporation engaged in the business of acting as surety for hire is, in respect to its obligation to indemnify an employer for loss sustained through the dishonesty of an employee, on whose bond the corporation is surety, virtually in the position of an insurer.

3. ———: **Action on Fidelity Bond: Issues Joined Under Pleadings.** In an action on a fidelity bond, by which a surety company agreed to indemnify an employer for loss sustained through the dishonesty of an employee, *held* that, in view of specific admissions in the answer of certain allegations contained in the petition and the failure of the answer to deny other allegations in the petition stating 'a cause of action, there was nothing to be submitted to the jury, except special defenses pleaded in the answer, as to which the burden of proof rested on defendant.

4. **PLEADING:** Effect of Failure to Traverse Allegations. Where the answer fails to deny allegations in the petition stating a cause of action, there is nothing to submit to the trier of the facts.

5. **PRINCIPAL AND SURETY:** Action on Fidelity Bond: Auditing of Books: Condition Precedent or Defense. Answers given by an employer in its application to a surety company for a fidelity bond covering an employee, to the effect that it would have proper audits and examinations of the employee's books made, etc., were not conditions precedent to the company's liability on the bond, notwithstanding they were so termed in the application, since they did not purport to be statements of existing facts, the falsity of which would prevent the contract from taking effect, but were essentially covenants or promissory warranties respecting the employer's future conduct in relation to the employee, the breach of which might operate to defeat the contract after it had gone into effect; and hence, in an action on such bond, it did not devolve upon the employer to affirmatively establish that such audits and examinations were made, but the breach of such obligation merely constituted a defense, the burden of proving which rested upon defendant.

6. ———: ———: Failure to Audit Books: Sufficiency of Evidence to Establish Defense. In such case, defendant having pleaded the breach of such allegation as a defense, *held*, under the evidence, that the question of whether or not plaintiff performed such obligation was for the jury.

7. **APPELLATE PRACTICE:** Conclusiveness of Verdict. A question of fact for the jury is concluded by the verdict.

Appeal from St. Louis City Circuit Court.—*Hon. Eugene McQuillin*, Judge.

AFFIRMED.

*A. & J. F. Lee* and *James A. Waechter* for appellant.

(1) The court erred in permitting Ambrose to testify that the papers in Healy's office were signed by Healy when he did not know Healy's signature. (2) The court erred in refusing to permit the defendant to show that the books of plaintiff were so kept that the audit required by plaintiff's statement, which was the basis of the bond, could not be made. (3) The court erred in permitting plaintiff's exhibit.

Nos. 2, 8, 7 and 4, which were reports of the auditing committee, to be read in evidence, without proof that the books had in fact been audited. (4) The court erred in refusing defendant's demurrer to the evidence, because—the burden of proof was on the plaintiff to established the performance of the conditions precedent to its recovery, on the bond and plaintiff's testimony wholly failed on this point; including  (a)  the want of any supervision over Healy;  (b)  the absence of quarterly and annual audits of his books; (c) the taking of money unlawfully from his office by the executive committee, who had complete charge of plaintiff's affairs,. thus causing the defalcation. (5) The court erred in giving plaintiff's instruction No. 1:  (a). It put the burden on the defendant to prove it did not deliver the bond to plaintiff, when under the pleadings it rested on plaintiff. Buffington v. Thompson, 97 Ga. 416.  (b) In declaring the annual certificates of renewal continued the bond in force, when the testimony shows these certificates were fraudulently obtained and void. (c) The presumption is the defendant acted upon the false statements of plaintiff in issuing the renewal certificates. F. & D. Co. v. Courtney, 186 U. S. 349.  (d) In placing the burden of proof on defendant to show plaintiff had not performed all the conditions precedent to its recovery, according to the terms of the bond. R. S. 1909, sec. 1836. (6) The court erred in giving plaintiff's instruction No. 2:  (a)  It told the jury as a matter of law the defendant had delivered the bond to plaintiff, when this was a question of fact.  (b) It further instructed the jury that the failure of Healy to sign the bond constituted no defense.  North St. Louis, etc., v. Obert, 169 Mo. 507; Union Central Life Co. v. U. S. & G. Co., 58 Atl. 437; Adelburg v. U. S. F. & G. Co., 99 N. Y. 465; Plataner v. American Bonding Co., 92 N. Y. Sup. 238. (7) The court erred in giving plaintiff's instruction No. 7, because it cast the burden of proving the performance of the conditions precedent to plaintiff's recovery on defendant, although the performance was alleged by the plaintiff and specifically de-

nied by the answer. R. S. 1909, sec. 1836. (8) The parties may determine what shall be conditions precedent, and their intention must govern. Green v. Thomas, 11 N. E. 318; Huggins v. Daly, Fed. Rep. 48, L. R. A. 320, 323; Chitty on Contracts, 771; Dumas v. Insurance Company, 40 L. R. A. 358-361. (9) The court erred in refusing defendant's instruction No. 8, that the signature of Healy was essential to the bond. See authorities cited above under point 6 or plaintiff's instruction No. 2. (10) The court erred in refusing plaintiff's instruction No. 6, which sought to instruct the jury that if the renewal certificates were issued on the faith of false statements by the plaintiff, they were invalid. See authorities cited above under Point 5.

*Holland, Rutledge & Lashly* for respondent.

(1) The amount of the defalcation is admitted by the pleadings. Where allegations of the petition are not specifically denied and the answer fails to contain a general denial, such allegations of the petition stand confessed by the answer. Boles v. Bennington, 136 Mo. 522; Kansas City Hotel Co. v. Sauer, 65 Mo. 279. (2) Where the evidence is the result of voluminous facts or the inspection of many books and papers, the examination of which cannot conveniently take place in court, a witness, though not allowed to give evidence of their particular contents, will be allowed to testify as to the result of such examination. Masonic Society v. Lackland, 97 Mo. 139; State v. Findley, 101 Mo. 223; 2 Wigmore, Evidence, section 1230. (3) Parties on appeal cannot adopt a new theory for the case different from that at the trial. Walker v. Owen, 79 Mo. 563; St. Louis v. Contracting Co., 210 Mo. 491; Brier v. Bank, 225 Mo. 673; Koshkonong v. Boak, 173 Mo. App. 310; Dice v. Hamilton, 178 Mo. 81. (4) Possession of a bond is prima-facie evidence of its delivery. Comstock v. Gage, 91 Ill. 328; Smith v. Kirkland, 81 Ala. 347. Delivery of a bond need not be proved by direct evidence, but may be inferred from the acts of the parties. St.

197 M. A.—28

L. Brewing Ass'n v. Hayes, 97 Fed. 859; 4 Am. & Eng. Ency. Law, 622; Wright v. Lang, 66 Ala. 396.    (5) The plea of false representations to secure execution and the delivery of the bond and of breach of warranty is inconsistent with the denial that the bond was ever executed or delivered.    Mirrielees v. Railroad, 163 Mo. 470; Dickey v. Porter, 203 Mo. 1; State ex inf. v. Delmar Jockey Club, 200 Mo. 55.    (6)  Surety companies issuing contracts of this character are essentially insurers and their policies should be construed as policies of insurance.    Krey Packing Co. v. U. S. F. & G. Co., 189 Mo. App. 591-599; Surety Co. v. Pauly, 170 U. S. 133; Fidelity Co. v. Courtney, 185 U. S. 343; Grocer Co. v. Fidelity Co., 130 Mo. App. 421; Boppart v. Surety Co., 140 Mo. App. 675; Tebbits v. Mercantile Trust Co., 73 Fed. 95; City of Topeka v. Fed. Surety Co., 213 Fed. 958; Barton v. Guaranty Co., 192 Mo. App. 561; Lackland v. Surety Co., 256 Mo. 133; Rule v. Anderson, 160 Mo. App. 347.    (7)  Where a fidelity bond recites upon its face that it will be invalid without the principal's signature, a surety company issuing the policy is estopped from setting up the lack of signature as a defense, where it has delivered the bond to the obligee with the evident intention of being bound thereby.    Rule v. Anderson, 160 Mo. App. 347; Aetna Ins. Co. v. Mining Co., 154 Fed. 545; Surety Co. v. Bank, 89 Ark. 471. This is peculiarly so where the principal is liable without reference to the breaches of the bond.    U. S. F. & G. Co. v. Haggert, 163 Fed. 801; Lovejoy v. Isbel, 70 Conn. 557; St. Louis Brewing Co. v. Hayes, 97 Fed. 859. (8) Substantial compliance by the insured in good faith with the strict and rigid conditions and requirements of the surety companies is sufficient.    Such compliance with promissory warranties is sufficient.    Guaranty Co. v. Mechanics Trust Co., 80 Fed. 766; Trust Co. v. Guaranty Co., 68 Fed. 458; Supreme Council v. Casualty Co., 63 Fed. 59; Fidelity Co. v. Courtney, 186 U. S. 360; Surety Co. v. Pauley, 170 U. S. 159; Boppart v. Surety Co., 140 Mo. App. 683.    (9) The conditions involved, if condition at all, are conditions subsequent.    Even the

alleged promissory warranties are conditions subsequent, and their breach must be pleaded and proved by defendant. But these provisions were not conditions at all, but merely covenants. Title Guaranty Co. v. Nichols, 224 U. S. 345; Redman v. Aetna Ins. Co., 49 Wis. 431; Piedmont v. Insurance Co., 98 U. S. 77; American Cred. Ind. Co. v. Wood, 73 Fed. 81; Murray v. N. Y. L. Ins. Co., 85 N. Y. 236; Freeman v. Trav. Ins. Co., 144 Mass. 572; 2 Cooley's Briefs Ins., pp. 1466, 1480, 1484; Cady v. Imperial Ins. Co., 4 Fed. Cas. 984; Phoenix F. Ins., Co. v. Guaranty Co., 115 Fed. 964. (10) The burden of proving the allegations of the answer with respect to the falsity of specific declarations rested with the bonding company. Title Guaranty Co. v. Nichols, 224 U. S. 345. (11) Where representations appear only in the application and not in the policy, even though they amount to warranties, it is incumbent on the bonding company which relies on their breach, to allege them and assume the burden of proof. American Cred. Ind. Co. v. Wood, 73 Fed. 81. Such was done in this case, as the answer of the defendant and the instructions demonstrate.

STATEMENT.—This is an action by the plaintiff association, a corporation under the laws of this State, to recover upon a bond executed by the defendant to secure the faithful performance of the duties of one John M. Healy as secretary of plaintiff association. There was a verdict and judgment for plaintiff below in the sum of $5,000 and interest accrued, and the defendant prosecutes the appeal.

The questions raised on appeal require that the pleadings be noticed with some particularity.

## THE PETITION.

The amended petition, on which the case was tried, avers: (1) That defendant was engaged in the business of executing fidelity and insurance contracts and indemnity contracts for profit; (2) that on September 1, 1903, Healy was duly elected secretary of plaintiff association,

and so continued until some time in January, 1910, and as such was in charge of certain books, accounts, and moneys belonging to plaintiff; (3) that on October 31, 1903, defendant issued to plaintiff its "contract of indemnity" whereby defendant, for a premium of $—— paid to it, agreed that it would reimburse plaintiff to the extent of $5,000 for any and all loss sustained by it through the larceny or embezzlement committed by said Healy during the term commencing September 1, 1903, and ending September 1, 1904; (4) that, among other things, it was provided in said contract that upon the discovery by plaintiff that a loss had been sustained, notice should be given defendant, and that plaintiff should file its claim with the defendant; (5) that the contract provided that it should not lapse on September 1, 1904, if continued in force by a renewal receipt or renewal receipts executed by defendant, but should continue in force for the term or terms of such renewals, and that renewals were made annually until and including September 1, 1909, the last renewal to expire September 1, 1910; (6) that on or about January 18, 1910, Healy was removed from office, and was then short in his accounts with plaintiff in the sum of $13,038.16, which shortage occurred when the said bond was in force and by reason of Healy's personal dishonesty amounting to larceny and embezzlement, and that Healy failed and refused to make good said sum to plaintiff, which was thereby lost to plaintiff; (7) that due notice of the loss and proof of the claim was made to defendant, as required; and (8) that plaintiff "has performed all the conditions of said obligations, as so continued and in force, by it required to be performed."

Judgment is prayed in the sum of $5,000, with interest from and after May 18, 1910.

## THE ANSWER.

The answer contains no general denial. It (1) denies that defendant issued "a contract of indemnity" to plaintiff. It is then averred: (2) That on October 19, 1903, Healy, plaintiff's employee, executed and delivered to defendant an application whereby he applied to defen-

dant to sign, as securety, a "fidelity bond," in which he was to be designated as principal, to be given to the plaintiff to protect the latter to the amount of $5,000; (3) that, on or about October 23, 1903, plaintiff executed and delivered to the defendant its "statement" relative to the bond proposed to be given by defendant on behalf of Healey; (4) that pursuant to the terms and conditions of said application, and the statement signed by plaintiff, and "relying upon the statements, warranties, and answers therein contained, defendant executed its fidelity bond, dated the 31st day of October, 1903," in which Healy was designated as principal and as the employee, plaintiff as the employer, and the defendant as surety, "which is the same bond here sued on;". (5) that the bond executed by the defendant contained, "among other conditions," the following: "All the representations made by the employer, his or its officers, to the surety, are warranted by the employer to be true;" (6) that the "statement" provided that the answers given by plaintiff were to be taken as "conditions precedent and as the basis of the bond applied for, or any renewal or continuation of the same."

It is then alleged: (7) That in this statement plaintiff made answer to certain questions stating, among other things, that moneys coming into Healy's hands would be turned over to the treasurer "after each meeting," and would be required to be deposited in a certain bank, and would be withdrawn therefrom only on the official signatures of certain officers of plaintiff association; that Healy would not be authorized to pay out of the cash in his custody any moneys to plaintiff's account; that he would account to "the executive committee" for his handling of funds and securities, and make settlement every quarter; and that his books would be audited and verified with funds on hand and in bank every quarter by the "board of trustees." And defendant then avers "that said answers were conditions precedent and promissory warranties," and that plaintiff failed to comply with the said conditions, and did not require Healy to turn over the funds to the treasurer after each meeting or deposit

the same in the bank specified in plaintiff's name; "denies" that the money was only drawn out on the signatures of the said officers of plaintiff, averring that Healy was permitted to draw it out in whatever manner he chose and to pay amounts on account of the association out of the cash, that he was not required to make settlements every quarter, and that his books and accounts were not audited and verified with funds on hand and in bank every quarter by the board of trustees, or at any other time. And it is averred that "the false statements made by plaintiff as aforesaid were made by it for the purpose of inducing the defendant to issue to it the bond sued on, and did induce the issuance thereof, and but for such false statements, answers, conditions and warranties, defendant would not have issued said bond."

The answer further alleges: (8) That the bond sued upon contained, among other "conditions," the following: "That the employer shall observe or cause to be observed all due and customary supervision over said employee for the prevention of default; that there shall be a careful inspection of the accounts and books of said employee at least once in every twelve months from the date of this bond." And defendant "denies that any supervision whatever was exercised by the employer over the employee for the prevention of default, or that there was an inspection of the accounts or books of said employee at least every twelve months from the date of said bond, or at any other time."

It is further alleged: (9) That the bond contained the further "condition," viz.: "This bond shall not lapse at the above time if it shall be continued in force by a renewal receipt or receipts executed by the surety, but shall continue in force for the term or terms of such renewal;" that on September 4, 1904, plaintiff executed and delivered to defendant a certificate stating the books and accounts of Healy had been examined by plaintiff and found correct in every respect, and that all moneys handled by him had been accounted for; that on August 25, 1905, plaintiff executed and delivered to defendant a certificate stating that since the issuance of the bond Healy had faithfully,

honestly, and punctually accounted for all money and property in his control or custody, and had always had proper funds and securities on hand; and that on or about August 1, 1906, August 7, 1907, August 18, 1908, and September 9, 1909, plaintiff "executed and delivered certificates and statements covering the years respectively," similar to the certificate of August 25, 1905, and also stating that Healy was "not in default." And it is averred that these certificates and statements were false; that Healy was in default at the time of the execution of each thereof; that, relying upon said certificates, statements, and warranties, defendant each year executed its certificate, renewing said bond up to and including September 9, 1909; that such false statements were made by plaintiff for the purpose of inducing, and did induce defendant to issue its renewal certificates for the bond sued upon, which but for "such false statements and warranties" would not have been issued; and that by reason thereof plaintiff "is estopped to demand indemnity in this case."

As a further defense the answer pleads: (10) That the bond contains the following "condition," viz.: "It is essential to the validity of this bond that it be signed by the employee." And it is averred that when the bond was signed by defendant as surety it was the understanding that it was to be signed by Healy as employee and principal before being delivered to plaintiff; that it was delivered to plaintiff without the signature of Healy, and "without the knowledge or approval of the defendant that it was being delivered without said signature;" that the bond was not thereafter signed by Healy; and that defendant had no knowledge of the fact that it had not been so signed until it was filed as an exhibit to the petition herein. And the answer made tender to plaintiff of the sum of $175, the amount alleged to have been paid by it to defendant for the execution of the bond and renewals thereof, averring payment thereof into court for plaintiff.

## THE REPLY.

The reply admits that defendant executed its "fidelity bond" dated October 31, 1903, in which Healy was designated as principal and employee, the plaintiff as employer, and defendant as surety, "which is the same bond herein sued on;" that the bond provided that it should not lapse if continued in force by a renewal receipt or renewal receipts executed by defendant, and that defendant each year executed its "certificate" renewing the bond up to and including September 9, 1909; that Healy "did not faithfully, honestly and punctually account for all money and property in his possession, and did not always have funds and securities on hand." The reply then "denies each and every other allegation in said first defense contained."

Replying to the "second defense," plaintiff stated that the bond sued on contains the following conditions, to wit: "It is essential to the validity of this bond that it be signed by the employee, and that the actual payment to the surety of the premium, or of any renewal premium, shall be a condition precedent to any recovery on this bond for any default during the term of this bond, or of any renewal of the same as the case may be;" that the bond was delivered to plaintiff without Healy's signature, and was not thereafter signed by Healy; and that plaintiff has paid to defendant $175, being the aggregate of seven several premiums for the issuance of the bond and its six respective "annual continuations." Plaintiff then "denies each and every other allegation in the said second defense contained."

Further replying to the "second defense," plaintiff avers that after defendant had delivered to it the bond, "well knowing said instrument to be unsigned," and after the expiration of the original term of the bond, but prior to notification of loss thereunder, defendant accepted from plaintiff, in each of the years from 1904 to 1909, inclusive, payment of the six separate renewal premiums of $25 each.

## THE EVIDENCE.

Plaintiff introduced in evidence the bond sued upon. The pertinent provisions thereof, together with defendant's objection to its introduction, will be noticed in the course of the opinion.  Four of the renewal certificates were put in evidence, though the answer admits the execution of all six thereof.  By stipulation the "amended charter, constitution, and by-laws" of plaintiff were admitted in evidence. Defendant admitted in open court due notice to it of Healy's defalcation, and of plaintiff's claim upon the bond.  Plaintiff then called a witness, an expert accountant, by whom it made proof of the amount of the shortage, to wit, $13,038.16.  Upon the cross-examination of this witness the court sustained an objection of plaintiff's counsel to an extended inquiry into the method whereby the witness, as an accountant, arrived at the amount of the shortage; this upon the theory that defendant by its answer had admitted the amount thereof. Plaintiff thereupon rested.

To sustain the issues on its part defendant introduced the "application" and the "statement" referred to in the answer.  The "statement" shows the answers to have been made by plaintiff as alleged in defendant's answer herein, with the exception that in answer to the question whether Healy would "be required to deposit money in a special bank account" plaintiff answered "No."  This answer was doubtless given for the reason that it was contemplated that moneys would be turned over to the treasurer (as stated in another answer), who would deposit them in bank.  Defendant then introduced the various certificates or statements executed by plaintiff in connection with the respective renewals of the bond as alleged in the answer.  Defendant further adduced the testimony of certain witnesses tending to show that audits of Healy's books and accounts were not regularly made, and that he was not required to regularly report to the executive committee.  It is unnecessary to state at length this testimony.  On cross-examination the witness identified reports of auditing committees, which they had signed

as members of such committee. Neither need we recite the testimony of Healy, then an inmate of the State penitentiary, who testified as defendant's witness.

In rebuttal plaintiff, among other things, introduced in evidence certain reports of auditing committees.

## THE INSTRUCTIONS.

The first two instructions given at plaintiff's request are as follows:

I. "The following facts are admitted by the pleadings in this case to be true: That the American Bonding Company of Baltimore was at the time of the occurrences complained of a corporation duly organized under the laws of the State of Maryland, engaged in the business of executing fidelity and insurance contracts and indemnity contracts for purposes of profit to itself, and was licensed to conduct such business in the State of Missouri; that one John M. Healy was on September 1, 1903, the duly elected secretary of the plaintiff, and continued to be such until the month of January, 1910, and as such was at all the times last mentioned in charge of certain books, accounts, and moneys belonging to plaintiff; that on October 31, 1903, the defendant issued to the plaintiff the certain fidelity bond read in evidence for a consideration then paid to it by plaintiff; that said fidelity bond was thereafter continued in force by the annual continuation certificates read in evidence to September 1, 1910; that between said September 1, 1903, and January 18, 1910, said Healy, as secretary of the plaintiff association, was short in his accounts in the sum of $13.038.16 by reason of the personal dishonesty of said John M. Healy, amounting to larceny and embezzlement; that said amount of money has been lost to plaintiff, and that said Healy has failed and refused to make the same good to the plaintiff; that due notice of said loss and proof of said claim as required in said fidelity bond was made to the defendant; you are therefore instructed that your verdict will be for the plaintiff unless you find in favor of the defendant on one or more of its defenses submitted for your consideration."

2. "The fact that the original fidelity bond, dated October 31, 1903, executed and delivered by the defendant, the American Bonding Company, to plaintiff, was not signed by John M. Healy, constitutes no defense to plaintiff's action in this case, and that defense is therefore withdrawn from your consideration."

For plaintiff the court also instructed the jury that the burden was on defendant to prove by the preponderance or greater weight of the evidence the facts constituting any of its defenses—explaining the meaning of the term "preponderance or greater weight of the evidence."

The instructions given at defendant's request need not be here set out. In so far as they need be noticed, they will be referred to later herein. Two instructions offered by defendant were refused. The refusal of these is complained of, but the point will be disposed of in considering the propriety of giving plaintiff's instructions.

ALLEN, J. (after stating the facts).—The objection made to the introduction of the bond below, viz. that it had not been signed by Healy, we regard as without merit. True it is that the bond provided that it was essential to the validity thereof that it be signed by the employee. Defendant was entitled to have it so signed, but this was a right which defendant could waive if it saw fit. The rule stated in St. Louis Ass'n v. Obert, 169 Mo. 507, 69 S. W. 1044, on which appellant relies, has here no application.

Defendant is a corporation engaged in the business of acting as surety for hire. In respect to its obligation to indemnify plaintiff, defendant is virtually in the position of an insurer. [See Krey Packing Co. v. U. S. F. & G. Co., 189 Mo. App. loc. cit. 599, and cases cited, 175 S. W. 322; Tebbets v. Mercantile Guarantee Co., 73 Fed. 95, 19 C. C. A. 281.] Having issued and delivered this bond without requiring the signature of Healy, and having accepted from year to year the various premiums paid by plaintiff therefor, treating the instrument as one properly executed until a loss occurred, defendant will

not now be permitted to repudiate its obligation on the ground that Healy's signature is lacking. [Rule v. Anderson, 160 Mo. App. 347, 142 S. W. 358.]

In view of the pleadings and evidence, as shown above, we regard it as entirely clear that the trial court properly refused to take the case from the jury, and that the court properly instructed that by the pleadings the facts mentioned in plaintiff's first instruction stood admitted, and that the burden was upon defendant to establish the special defenses set up in its answer. It is unnecessary to here refer to the allegations of the petition, and the contents of the answer *seriatim,* which are fully shown above. The specific admissions of the answer, coupled with the failure to deny, by general denial or otherwise, the averments of the petition stating a cause of action on the bond, left nothing to be submitted to the jury except the special defenses asserted.

By the form of its answer defendant appears to have assumed the burden of proving the allegations of its answer to the effect that plaintiff had failed to act in accordance with the answers given in its "statement" made when the bond was applied for. But defendant urges that these answers were "conditions precedent" to liability on the bond, that it consequently devolved upon plaintiff to affirmatively establish compliance therewith, and that plaintiff failed to show that proper examinations and audits of Healy's books were made, and report thereof duly made to the executive committee of plaintiff association, in accordance with the answers contained in the said "statement" of plaintiff. But we think that these answers were not conditions precedent, and that calling them such in the statement could not have the effect of making them conditions precedent. [See Title Guaranty & Surety Co. v. Nichols, 224 U. S. 346, 32 Sup. Ct. 475, 56 L. Ed. 795; Freeman v. Travelers' Ass'n Co., 144 Mass. 576, 12 N. E. 372; Krey Packing Co. v. U. S. F. & G. Co., supra.] They did not purport to be statements of existing facts, the falsity of which would operate to prevent the contract from becoming effective, but were essentially covenants or prom-

issory warranties respecting plaintiff's future conduct, the breach of which might operate to defeat the contract after it had come into effect. In regard to this we cannot do better than to quote from the learned opinion of Mr. Justice LURTON in Title Guaranty & Surety Co. v. Nichols, supra, as follows:

"The question was whether this requirement was a condition precedent to liability which the bank was required to aver and prove or whether it was a defense to be made out by the defendant. But a construction which makes the bond inoperative until the employer shows that it had made such examinations is not a fair and reasonable interpretation. The distinction between conditions precedent and subsequent is plain enough. The condition here involved, if properly a condition at all, is of the latter class.

"The coming into effect of a contract may be made to depend upon the happening or performance of a condition. But a condition subsequent presupposes a contract in effect which may be defeated by the happening or performance of a condition. Where, therefore, an action is upon a contract subject to a condition precedent, the performance of that condition must be averred and proved; but if the contract sued upon is subject to a condition subsequent, there is no occasion for any averment in respect to the condition. It is a matter of defense, which must come from the other side. [1 Chitty, Pl., pp. 246, 255.]

"The plaintiff, was plainly entitled to recover upon proving the bond, an embezzlement, and a breach by a refusal to indemnify. It was not obliged to aver that it had made the examinations which it agreed should be made. If it had failed in that duty, it was for the surety company to so plead and prove. Such, indeed, was the course of the pleading in this case, and a breach of the agreement to make such examinations was set up as a defense. There was no error in the ruling of the court that the *onus* was upon the surety company to prove a breach of the obligation to make examinations"—citing cases.

In this connection it may be noted that the only requirement of the bond that is made a condition precedent to a recovery thereon is "the actual payment to the surety of the premium, or of any renewal premium."

And it is quite clear that the evidence by no means conclusively showed a breach of the obligation resting upon plaintiff with respect to the examination and auditing of Healy's books and accounts, as contended. True, there is some evidence tending to make it appear that plaintiff failed in its duty in this respect; but, as said above, witnesses who testified in favor of defendant on this issue, denying that audits and reports were made, were confronted by reports of auditing committees signed by the witnesses themselves as members of such committees. On this issue the evidence did nothing more than raise a question of fact for the jury, which is now concluded by the verdict. [See Gannon v. Laclede Gaslight Co., 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505.]

Appellant lays some stress upon the so-called renewal certificates, executed by plaintiff, in connection with the annual renewals or continuations of the bond. But the fact that these certificates stated that Healy had faithfully, honestly, and punctually accounted for all money and property in his custody, etc., and was not then in default, does not, standing alone, preclude a recovery by plaintiff on the bond. The statements meant nothing more than that there had been no discovery of any defalcation during the preceding year. And if plaintiff in good faith knew of no defalcation, and had no reason to believe that one existed, and in such belief made the certificates, a recovery could not be denied merely on the ground that such certificates had been executed. To so hold would mean that by signing and furnishing these certificates, though in good faith, plaintiff waived all liability of defendant upon the bond as for an undiscovered default of plaintiff's employee during the preceding year, the very thing against which plaintiff sought protection by taking the bond.

Other questions incidentally touched upon in the briefs do not warrant discussion. We perceive no rever-

sible error in the record, and the judgment should accordingly be affirmed. It is so ordered. *Reynolds, P. J.* and *Becker, J.*, concur.