MISSOURI PUBLIC SERVICE COMMISSION, Respondent,

v.

HURRICANE DECK HOLDING COMPANY, Appellant.

No. WD 70299.

Missouri Court of Appeals, Western District.

Feb. 9, 2010.

Elizabeth A. Marr, Lone Jack, MO, for appellant.

Jennifer L. Heintz and Eric Dearmont, Jefferson City, MO, for respondent.

Before Division Four: THOMAS H. NEWTON, Chief Judge, Presiding, LISA WHITE HARDWICK, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Hurricane Deck Holding Company ("Hurricane Deck") appeals the trial court's judgment imposing a penalty of $20,000 pursuant to section 386.570 [1] for a previously determined violation of public utility regulatory laws. Hurricane Deck contends that the trial court erred in assessing a penalty for the period from September 22, 2005, through December 30, 2005, as there was no evidence that Hurricane Deck unlawfully held itself out as a public utility for the entirety of that period. Hurricane Deck also contends that the penalty imposed was excessive and disproportionate. For the following reasons, we affirm the trial court's judgment.

### Factual and Procedural History

This is the second time we have addressed Hurricane Deck's violation of pub-

---

1. All statutory references are to RSMo 2000 as supplemented unless otherwise indicated.

lic utility regulatory laws. In *Hurricane Deck Holding Co. v. Public Service Commission,* we found that the Missouri Public Service Commission ("PSC") did not err in concluding that Hurricane Deck had illegally operated as a "public utility" subject to PSC regulation. 289 S.W.3d 260, 268 (Mo.App. W.D.2009) (*"Hurricane Deck I"*). The salient facts in that case warrant repeating to provide context for this case.

Hurricane Deck developed a residential subdivision in Camden County known as Chelsea Rose Estates or the Chelsea Rose Service Area ("Chelsea"). In doing so, Hurricane Deck constructed water and sewer systems to service Chelsea. Hurricane Deck owned these systems. However, the systems were initially operated by Osage Water Company ("Osage"), a public utility which possessed an appropriate certificate of convenience and necessity from the PSC. The PSC is statutorily authorized to exercise jurisdiction, regulation and control over public utilities, including public water and sewer utilities, by Chapters 386 and 393 of the Missouri Revised Statutes. On October 21, 2005, Osage went into receivership at the PSC's request.

Hurricane Deck sent a letter to Chelsea homeowners on December 30, 2005. The letter informed the homeowners of the receivership and also indicated that Hurricane Deck had been temporarily managing the systems since Osage had ceased being able to do so. The letter advised of Hurricane Deck's desire to turn ownership and responsibility for the systems over to the homeowners. The letter enclosed an accounting itemizing a portion of the actual costs for the systems for the previous two months and told the homeowners they were being billed their pro rata shares of the total, with each homeowner's share of the bill to be paid by January 22, 2006. Attached to the letter was the referenced accounting, entitled "HDHC/Quarterly Water & Sewer Assessment/ September 22–December 30." The accounting directed that payment should be remitted to Hurricane Deck.

The Staff of the PSC filed a complaint against Hurricane Deck on January 23, 2006 ("Complaint"). The Complaint alleged, in multiple counts, that Hurricane Deck held itself out as a public water and sewer utility commencing September 22, 2005, without the appropriate authorization from the PSC. The PSC issued an order ("PSC Order")[2] finding that by sending out bills to the homeowners, Hurricane Deck had engaged in conduct evidencing an intent to supply water and sewer service to the public for gain or compensation, subjecting it to PSC regulation. The PSC Order authorized the Staff to proceed with filing a petition in the circuit court to seek statutory penalties for these violations.

Hurricane Deck petitioned the circuit court of Cole County for review of the PSC Order. The circuit court affirmed the findings of the PSC on April 22, 2008. This court affirmed the circuit court order and found the PSC Order was supported by competent and substantial evidence and appropriately declared and applied the law. *Hurricane Deck I,* 289 S.W.3d at 263, 268.

---

**2.** The PSC initially entered an Order granting in part and denying in part Staff's motion for summary determination ("Partial Summary Judgment Order"). In the Partial Summary Judgment Order, the PSC noted Count IV of the Complaint remained unresolved, and until all allegations in the Complaint were resolved, its Partial Summary Judgment Order would be treated as interlocutory. Count IV was subsequently dismissed, and the PSC entered its order noting that its Partial Summary Judgment Order had, as a result, become a final resolution of the Complaint and was no longer interlocutory. The combination of these two PSC orders are, collectively, the PSC Order to which we herein refer.

While the proceedings reviewing the PSC Order were pending, and consistent with the authorization it was provided in the PSC Order, the Staff of the PSC initiated a separate action in the circuit court of Cole County seeking an assessment of statutory penalties against Hurricane Deck pursuant to section 386.570. On the PSC's motion, the trial court entered partial summary judgment on June 25, 2008, noting that the PSC's motion was essentially seeking affirmation of the PSC Order insofar as necessary to permit the trial court to proceed with calculation of a statutory penalty for the determined violations of public utility regulatory law. The trial court thus took judicial notice of its previous judgment affirming the PSC Order and found as a matter of law that Hurricane Deck "operated a water and sewer corporation, is subject to the jurisdiction of the PSC, and operated in violation of state laws and grounds."[3]

The trial court's partial summary judgment order specifically reserved determination of "the actual total days of operation and thus the amount of the penalties to be imposed." An evidentiary hearing was subsequently conducted to address these remaining issues. The trial court thereafter entered its order and judgment on November 5, 2008, finding that Hurricane Deck "sought to recover operational costs for the 100 days between September 22 and December 30." Because the PSC's petition requested recovery of the statutory minimum penalty of $100 per day per each violation determined, the trial court did not consider or permit evidence which

would have authorized a penalty in excess of the amount prayed. The trial court thus entered judgment for a $20,000 penalty, calculated by multiplying 100 days times $100 per day for each of the two violations—operating a water utility and operating a sewer utility. This appeal follows.

## Standard of Review

In a court tried case, the "judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). "When determining the sufficiency of the evidence [we] accept as true the evidence and inferences from the evidence that are favorable to the trial court's decree and disregard all contrary evidence." *T.B.G. v. C.A.G,* 772 S.W.2d 653, 654 (Mo. banc 1989) (citing *Morgan v. Morgan,* 701 S.W.2d 177, 179 (Mo.App. S.D.1985)).

## Point I

■ In its first point, Hurricane Deck claims that the trial court erred in determining that Hurricane Deck held itself out as a public utility from September 22, 2005, through December 30, 2005. Hurricane Deck alleges that the only "holding out" occurred on December 30, 2005, the date of its letter to Chelsea homeowners. Hurricane Deck thus contends that the maximum number of days for which a penalty could be assessed was one day. Hurricane Deck suggests that the content

---

3. The partial summary judgment order was entered almost a year before our decision in *Hurricane Deck I.* Though it may have been procedurally awkward for the PSC to initiate the separate proceeding seeking determination of the appropriate penalty for the violations determined by the PSC Order while the PSC Order remained subject to appellate re- view, we are aware of no prohibition against the PSC's chosen course of action. More- over, Hurricane Deck complains of no preju- dice from the timing of the proceedings and, given our intervening determination in *Hurri- cane Deck I,* would be unable in any event to demonstrate prejudice.

of the letter—i.e. the effort to extract payment from homeowners for a period from September 22 to December 30—is immaterial and that the only relevance of the December 30, 2005 letter was its date.

Though its point relied on is so framed, the argument portion of Hurricane Deck's brief attacks the propriety of the underlying conclusion that Hurricane Deck violated the law by holding itself out as a public utility. This issue was not before the trial court for determination, having already been determined by the PSC Order, and by the court's earlier judgment affirming the PSC Order. It is true that at the time of the trial court's judgment in this case, the finality of the PSC Order was still subject to appellate review. However, the trial court appropriately concluded that the PSC Order it had earlier affirmed foreclosed the issue of *whether* Hurricane Deck had violated the law, thus permitting the trial court to determine the timeframe of the violations and the appropriate statutory penalty to be assessed for the violations.[4]

■ To the extent Hurricane Deck's arguments expressly or impliedly seek review of the underlying determination that it acted as a public utility, the doctrine of law of the case precludes such review. In *Williams v. Kimes*, our Supreme Court stated that "[t]he doctrine of law of the case governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." 25 S.W.3d 150, 153 (Mo. banc 2000) (citations omitted). A previous holding precludes re-litigating issues on remand and subsequent appeal, and "[t]he decision of a court is the law of the case for all points presented and decided, as well as all matters that arose before the adjudication and might have been

raised but were not." *Id.* at 153–54. Whether Hurricane Deck held itself out as a public utility was finally disposed of in *Hurricane Deck I* and will not be directly or indirectly revisited by us here under the guise of an objection to the assessment of a statutory penalty. The only issue properly before us is whether the timeframe during which Hurricane Deck's illegal conduct occurred, as determined by the trial court, is supported by the weight of the evidence.

■ We conclude that the trial court's finding that Hurricane Deck held itself out illegally as both a water utility and a sewer utility from September 22, 2005, to December 30, 2005, was supported by substantial evidence, and is not against the weight of the evidence. *Murphy*, 536 S.W.2d at 32. The trial court received into evidence the December 30, 2005 letter authored by Hurricane Deck, along with its enclosed accounting. In that letter, Hurricane Deck noted it had owned the water and sewer systems for years. In that letter, Hurricane Deck billed Chelsea homeowners for water and sewer services for the period from September 22, 2005, through December 30, 2005. The trial court's judgment correctly noted that whether the attempt to collect payment for the time period specified in the letter and attached accounting constituted "operation as defined by the law has already been ruled upon." If the letter, which billed homeowners for utility services provided, was dispositive of the PSC's finding that Hurricane Deck was illegally acting as a public utility, it is axiomatic that the same letter supports a finding that the violations extended over the billing period set forth in the letter. We conclude, therefore, that Hurricane Deck's suggestion that it only held itself out as a utility on the date of

---

4. *See supra* note 3.

the letter is illogical. The fact of the letter cannot be separated from its content. The trial court appropriately considered the content of the letter to conclude that Hurricane Deck's violations of the law extended over the entire period for which it was attempting to collect money for the provision of utility services.

■ Hurricane Deck also attempted to explain the December 30, 2005 letter as something other than an indication that it was operating as a public utility. This testimony constituted no more than an attempt to revisit whether Hurricane Deck held itself out as a public utility, a matter which was not before the trial court for determination, as we have previously noted. Hurricane Deck offered no other evidence and did not contest that the dates in the letter for which it had attempted to bill homeowners were inaccurate. Point one is denied.[5]

### Point II

■ In Hurricane Deck's second point, Hurricane Deck claims the $20,000 penalty, calculated at $100 per day for each of the two determined violations over a 100 day period, is excessive, and violates the proportionality rule. The proportionality rule is a product of the Excessive Fines Clause of the Eight Amendment to the United States Constitution, which provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. "The Excessive Fines Clause ... applies to civil proceedings and serves to limit the Government's power 'to extract payments as punishment for some offense.'" *United States. v. Advance Tool Co.,* 902 F.Supp. 1011, 1018 (W.D.Mo.1995) (quoting *Austin v. U.S.,*

509 U.S. 602, 609–10, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993)). However, before the proportionality rule will be considered, one must first demonstrate that a fine or penalty, in relation to the illegal act, is "grossly disproportionate." *State v. Hall,* 56 S.W.3d 475, 481 (Mo.App. W.D.2001). "A punishment within the statutory limits is not cruel and unusual unless it is so disproportionate as to shock the moral sense of all reasonable men." *State v. Polley,* 2 S.W.3d 887, 894 (Mo.App. W.D.1999) (citing *State v. Trader Bobs, Inc.,* 768 S.W.2d 183, 188 (Mo.App. E.D.1989)). Hurricane Deck has not met this standard.

■ The trial court assessed penalties which are authorized under section 386.570. In sub-sections one and two, the statute provides that

> [a]ny ... public utility which violates or fails to comply with any provision of the constitution of this state or of this or any other law ... is subject to a penalty of not less than one hundred dollars nor more than two thousand dollars for each offense ... [I]n case of a continuing violation each day's continuance thereof shall be and be deemed to be a separate and distinct offense.

Section 386.570. Hurricane Deck does not argue that the range of penalty described in section 386.570 is constitutionally excessive. It only argues that the penalty assessed against it, though within the permissible range of penalties described in section 386.570, is excessive. "Whether the penalties as provided in that section [386.570] are unreasonable as applied to defendants is beyond this court's authority to determine." *State v. Davis,* 830 S.W.2d 27, 31 (Mo.App. S.D.1992). As long as "constitutional limitations are not exceed-

---

**5.** Hurricane Deck also claims in the argument portion of its brief that the trial court erred in its interpretation and application of section

386.570. This argument is not raised within Point Relied On One and will not be considered. Rule 84.04(e).

ed, the amount of the penalty is within the discretion of the legislature." *Id.,* citing *McLaurin v. Frisella Moving and Storage Co.,* 355 S.W.2d 360, 364 (Mo.App.1962). As the penalty assessed against Hurricane Deck is within the range permitted by statute and is, in fact, the lowest amount permitted by the statute, the penalty assessed by the trial court is not "so disproportionate as to shock the moral sense of all reasonable men." *Polley,* 2 S.W.3d at 894. The trial court did not erroneously declare or apply the law and, in fact, fairly limited the PSC's request for a penalty assessment to the amount prayed by the PSC in its petition.

Moreover, even if Hurricane Deck had articulated a sound argument suggesting a meritorious claim of violation of the Excessive Fines Clause, which it has not, it would be unable to substantiate such a claim. The only arguments advanced by Hurricane Deck to suggest that the penalty assessed was grossly disproportionate are arguments either previously waived or determined unfavorably to Hurricane Deck.

Hurricane Deck argues first that it did not intend to provide public water or sewer services for gain and that it received no compensation for the services rendered. This is merely another way of arguing that Hurricane Deck was not holding itself out to the public as a sewer and water utility. As previously noted, this issue was determined in *Hurricane Deck I* and will not be revisited.[6] *Williams,* 25 S.W.3d at 153–54.

Hurricane Deck also claims that it was merely acting as an authorized agent of the homeowners and that the December 30, 2005 letter was an authorized communication and assessment on the homeowner's behalf. This is yet another thinly veiled attempt to reargue whether Hurricane Deck was illegally holding itself out as a public utility. Hurricane Deck attempted to advance this same argument in *Hurricane Deck I.* We determined the argument had been waived because it was not raised before the PSC. *Hurricane Deck I,* 289 S.W.3d at 266 n. 6. Under the doctrine of law of the case, Hurricane Deck is barred from attempting to raise this issue a second time. *Williams,* 25 S.W.3d at 154. Point two is denied.

## Conclusion

We affirm the judgment of the trial court imposing a $20,000 penalty on Hurricane Deck pursuant to section 386.570 for its illegal operation of a water and sewer utility system during the period from September 22, 2005, through December 30, 2005.

All concur.

---

6. This Court carefully analyzed and rejected Hurricane Deck's claim that there was no evidence it had operated a water or sewer utility for gain or compensation. *Hurricane Deck I,* 289 S.W.3d at 267–68.