POINTE DEVELOPMENT, LLC, Respondent,

v.

ENTERPRISE BANK AND TRUST, Appellant.

No. WD 71591.

Missouri Court of Appeals, Western District.

Aug. 10, 2010.

Michael S. Cessna and Leonard B. Rose, Kansas City, MO, for appellant.

Steven W. White, Independence, MO, for respondent.

Before Division One: JAMES M. SMART, JR., Presiding Judge, MARK PFEIFFER, Judge and CYNTHIA L. MARTIN, Judge.

CYNTHIA L. MARTIN, Judge.

Enterprise Bank and Trust ("Enterprise") appeals from the trial court's judgment in favor of Pointe Development, LLC ("Pointe") in the amount of $51,469.92. Enterprise claims that the trial court erred in granting judgment to Pointe on its claim for breach of contract because Enterprise's loan commitment included a condition subsequent that the cost of con-

struction could not exceed the loan amount which was not satisfied by Pointe, relieving Enterprise of the obligation to provide the loan. We affirm.

### Factual and Procedural History[1]

Pointe was formed to develop unimproved property in Raymore, Missouri. The site was to be improved by the construction of seventy-four townhome units ("Project"). In August 2005, Pointe, through its managing member Steve Walker, approached Northstar Bank ("Northstar") to obtain a site development loan and a construction loan for the Project. The site development loan was to be used to construct roads, sewers, curbs, and other similar improvements to the land. The construction loan was to be used to construct fourteen townhome units.

On August 4, 2005, Northstar's loan committee approved Pointe's request for funding. On August 12, 2005, Northstar issued a written loan commitment agreeing to extend Pointe a site development loan in the amount $875,000 and a construction loan in the amount of $1,105,400. The single page commitment, titled "Credit Approval Request," was delivered by facsimile to Pointe on August 15, 2005. The commitment reflected that both loans were to be secured by a deed of trust on the Project and by Walker's personal guaranty. The commitment noted with respect to the construction loan that the "LTV would be the lesser of 100% of cost or 85% of APV." "LTV" means loan to value. "APV" means appraised value.

In April 2006, Pointe requested that Northstar approve a $125,000 increase in the site development loan. Northstar approved this request, thus increasing the site development loan to a total of $1,000,000. The written loan commitment (i.e. the August 12, 2005 "Credit Approval Request") was not revised to reflect this modification, though other records received in evidence indicate the revised site development loan in the amount of $1,000,000 was fully funded by Northstar.

Sometime prior to July 2006, Walker told Charles VanZante, the Northstar employee who signed the loan commitment, that the cost of construction of the townhomes would exceed $1,105,400, the amount of the construction loan. Walker did not ask Northstar to increase the amount of the construction loan, however.[2]

In July 2006, Enterprise acquired Northstar and assumed Northstar's obligations to Pointe pursuant to the commitment. Sometime during and after July 2006, Walker similarly advised loan officers at Enterprise that the cost of construction of the townhomes was expected to exceed the construction loan amount. In July, August, or September of 2006, Walker provided Enterprise with documentation that indicated that the cost of construction of the townhomes was expected to increase from $1,105,400 to $1,340,308. Walker did not ask Enterprise to increase the construction loan.

Walker testified that he had the funds available to cover the cost to construct the townhomes over and above the amount of the construction loan. Walker testified that he told Enterprise he would be able to cover any shortfall between the construc-

---

1. We view the facts in the light most favorable to the trial court's judgment. *Estate of Thompson v. Hicks*, 148 S.W.3d 32, 35 (Mo. App. W.D.2004).

2. The record suggests that the only material fact in contest at trial was whether Walker asked Northstar or its successor, Enterprise, to increase the amount of the construction loan to cover the additional costs of construction of the townhomes. The trial court found no such request was made.

tion loan amount and the cost of construction of the townhomes.

Walker sought to close on the construction loan with Enterprise in or around August 2006. Enterprise attempted to impose additional requirements on Pointe as a condition of closing, which Walker refused to perform. Enterprise refused to close on the construction loan.

Pointe sought and secured construction loan financing from an alternative source and used the proceeds of the new financing to pay off the development loan owed to Enterprise. Because Enterprise would not close on the construction loan when Pointe requested, and because Pointe was required to secure a construction loan from an alternative source, Pointe claimed it was damaged in the amount of $51,469.92.

Pointe filed suit against Enterprise for breach of contract. The case was tried to the court on September 3, 2008. On August 26, 2009, the Honorable W. Stephen Nixon entered Judgment in favor of Pointe in the amount of $51,469.02. The trial court noted that it had heard testimony and made credibility determinations consistent with its Judgment. The trial court found that Enterprise breached its agreement to fund the construction loan component of the loan commitment by failing to close the loan as requested by Pointe in August of 2006. Specifically, the trial court found that while there may have been discussions between Walker and Enterprise's loan officers regarding an increase in the cost of construction of the townhomes, there was no meeting of the minds between the parties to seek approval for an increase in the construction loan amount. The trial court found that Pointe never asked Enterprise to increase or modify, in any respect, the construction loan promised by the loan commitment. The trial court found that the original con-

struction loan component of the loan commitment remained in full force and effect and was never withdrawn or revoked by Enterprise.

Enterprise appeals.

## Standard of Review

■ "In a court tried case, the 'judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.'" *Mo. Pub. Serv. Comm'n v. Hurricane Deck Holding Co.*, 302 S.W.3d 786, 789 (Mo.App. W.D. 2010) (*quoting Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)).

## Analysis

■ In its sole point on appeal, Enterprise claims that the trial court erred in granting judgment to Pointe on its claim for breach of contract. Enterprise concedes its commitment formed a contract with Pointe. The essence of Enterprise's argument on appeal is that it was relieved of its obligation to perform the contract because the loan commitment included a condition subsequent that the cost of construction would not exceed the $1,105,400 construction loan—a condition Pointe did not satisfy, thus relieving Enterprise of its obligation to fund the construction loan. We disagree.

■ "A condition subsequent is a condition 'which by its express terms provides for an ipso facto cancellation on the happening or non-occurrence of a stipulated event or condition." *Reed Stenhouse, Inc. of Mo. v. Portnoy*, 642 S.W.2d 947, 952–53 (Mo.App. E.D.1982) (*quoting Berger v. McBride & Son Builders*, 447 S.W.2d 18, 19 (Mo.App.1969)). *See also Boatmen's Bank of Mid–Mo. v. Crossroads W. Shop-*

*ping Ctr., Ltd.,* 907 S.W.2d 800 (Mo.App. W.D.1995).[3] " '[C]onditions subsequent are not favored in law, and are construed strictly.... When relied on to work a forfeiture, they must be created in express terms or by clear implication.' " *Duncan v. Acad. of Sisters of the Sacred Heart of St. Joseph, Mo.,* 350 S.W.2d 814, 818–19 (Mo. banc 1961) (*quoting Holekamp Lumber Co. v. State Highway Comm'n,* 173 S.W.2d 938, 942 (Mo.1943)). "Words of limitation normally associated with the creation of a condition subsequent include the following: 'upon condition that'; 'upon express condition that'; 'provided that'; 'but if'; 'if it happens that' or a phrase of like import." *DeHart v. Ritenour Consol. Sch. Dist.,* 663 S.W.2d 332, 333 (Mo.App. E.D. 1983) (*citing* CORNELIUS J. MOYNIHAN, INTRODUCTION TO THE LAW OF REAL PROPERTY, 99 (1962); RESTATEMENT (FIRST) OF PROP. section 45 cmt. j (1936)).[4]

Enterprise failed to identify in its initial brief any provision of the loan commitment which Enterprise believed warranted the "implication" of a condition subsequent. This notable omission was highlighted by Pointe in its brief, prompting Enterprise, in its reply brief, to point to the following language in the loan commitment as the alleged condition subsequent: "LTV would be the lesser of 100% of cost or 85% of APV."

We conclude that this provision of the loan commitment is not a condition subsequent, whether express or implied. The provision obviously includes no words of limitation typically associated with express conditions subsequent. Nor does the provision expressly or clearly articulate that the occurrence or nonoccurrence of an event will terminate Enterprise's duty to fund the construction loan. *Cf. Deutsch v. Boatmen's Nat'l Bank of St. Louis, N.A.,* 991 S.W.2d 206 (Mo.App. E.D.1999) (contingent sale contract contained express language that sale is contingent and if condition is not satisfied that the contract is null and void); *Hall v. W.L. Brady Invs., Inc.,* 684 S.W.2d 379 (Mo.App. W.D. 1984) (contingent real estate construction loan commitment expressly provided for conditions for several installments of the loan, the initial installment conditioned on the satisfactory completion of improvements).

■ Moreover, even if the proffered provision could be construed to imply a condition subsequent, there was no evidence to suggest the condition was not satisfied by Pointe. The provision required that the $1,105,400 agreed amount of the construction loan could not exceed the lesser of 100% of the cost of construction *or* 85% of the appraised value. At the time Enterprise refused to fund the construction loan, the cost of construction of the townhome units had increased to

---

**3.** A condition subsequent is distinguishable from a condition precedent. A condition precedent must be shown to have been performed as a precursor to establishing that a contract exists, while a condition subsequent presumes a valid contract, the performance of which is excused by the occurrence or nonoccurrence of the condition. *St. Louis Police Relief Ass'n v. Am. Bonding Co. of Baltimore,* 197 Mo.App. 430, 196 S.W. 1148, 1152 (1917). The Restatement and other commentators have since abandoned use of the term "condition subsequent," replacing it with the concept of an event that terminates a duty.

*Howard v. Youngman,* 81 S.W.3d 101, 110 n. 2 (Mo.App. E.D.2002) (*citing* RESTATEMENT (SECOND) CONTRACTS sections 224, 230). Regardless, the concept of termination of a duty still presumes an existing contract.

**4.** Property law treatises provide relevant discussion of the law of conditions subsequent as such conditions are often placed in deeds of conveyance to impose conditions with respect to the future use of property as a condition of retaining title.

$1,340,308. Thus, the agreed amount of the construction loan ($1,105,400) did not exceed 100% of the cost of construction ($1,340,308). There was no evidence, however, of what the appraised value of the townhome units would be once constructed. Thus, Enterprise presented no evidence suggesting whether the agreed amount of the construction loan exceeded 85% of the appraised value, and more to the point, no evidence of which of the two "prongs" of its alleged condition subsequent (100% of the cost of construction or 85% of the appraised value) would, when compared to the agreed construction loan amount, produce the "lesser" number. We conclude that that this provision in the loan commitment is not a condition subsequent, and was more likely intended to prevent Enterprise from being obligated to provide "cash out" to Pointe should Pointe's cost of construction end up being less that the agreed construction loan amount. Whatever the provision means, one thing is clear. The provision never states that the cost of construction of the townhomes cannot exceed the agreed construction loan amount—a fundamental premise underlying Enterprise's argument, but a "condition" notably unstated in the loan commitment.

■ At oral argument, Enterprise conceded that the loan commitment does not provide in clear or express terms that Enterprise's obligation to fund the construction loan is conditioned on Pointe being able to build the townhomes for the amount of the loan. Enterprise thus abandoned discussion of the aforementioned provision in the loan commitment. Instead, Enterprise argued a new theory—that a condition subsequent can be implied from the circumstances. Enterprise alleged that because the trial court found in its judgment that both Pointe and Enterprise understood that the construction loan was to be "fully secured," the unexpected increase in the cost to construct the townhomes in excess of the amount of the construction loan required the trial court to conclude, as a matter of law, that Enterprise was relieved of its obligation to close on the loan.

Enterprise offers no support for its contention that a condition subsequent can be implied from the circumstances. In any event, Enterprise's argument that because the parties expected the loan to be fully secured a condition subsequent must be implied is simply without merit. A lender is "fully secured" when the outstanding balance due on a loan is exceeded by the value of the collateral which secures the loan. Here, there was no evidence (nor any common sense reason to conclude) that an increase in the cost to construct the townhomes would result in the townhomes having a value (once constructed) that was less than the amount of the construction loan.

Implicit in Enterprise's newly asserted argument is that had it funded the construction loan, and had Pointe failed to come up with the additional funds to cover the difference between the construction loan and the increased cost of construction, then Enterprise would have been left with an incomplete project whose value might not reach the level of the construction loan, leaving Enterprise "under" secured. The difficulty with this argument is that the trial court heard testimony from Walker that he told Enterprise that he had the funds available to cover the cost to construct the townhomes over and above the construction loan amount. Enterprise offered no contrary evidence, and the trial court was free to believe Walker's testimony. Thus, the notion that the trial court committed legal error by finding on the one hand an agreement between the parties that Enterprise would be "fully se-

cured" while concluding on the other hand that Enterprise breached the loan commitment by not funding the construction loan is without merit.

We understand the dilemma Enterprise faced. A bank may not desire to fund a secured loan to construct property unless it can assure a satisfactory ratio between the amount of its loan and the value of the property once constructed. Moreover, a bank may not desire to fund a loan to construct property unless it knows all of the funds necessary to complete construction of the property are available. However, the loan commitment in this case failed to address these concerns and failed to incorporate provisions which would clearly condition Enterprise's obligation to fund the construction loan accordingly.

The trial court's Judgment concluding that Enterprise's refusal to fund the construction loan was a breach of contract is supported by substantial evidence, is not against the weight of the evidence, does not erroneously declare the law, and does not erroneously apply the law. Enterprise's point is denied.

### Conclusion

We affirm the trial court's judgment.

All concur.